UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: HARTFORD COVID-19 BUSINESS INTERRUPTION
PROTECTION INSURANCE LITIGATION          MDL No. 2963

### RESPONSE TO ORDER TO SHOW CAUSE

Respondents, plaintiffs in five class action lawsuits currently pending against Hartford in the District of New Jersey and the Southern District of Florida,[1] hereby respond to the Order to Show Cause by recommending that the Panel consolidate all the pending lawsuits against the Hartford insurers, Cincinnati Insurance Company, and Society Insurance for coordinated pretrial proceedings in the District of New Jersey. Respondents have already been coordinating with other counsel in pending cases against some of the other Admitted Carriers that were subject to the original MDL Petition and are in the process of coordinating and transferring many of those cases productively.[2]

---

[1] *Go-4 Nuge Production Rentals LLC v. The Hartford Financial Services Group, Inc., et al.*, No. 1:20-cv-22749-MGC (S.D. Fla.); *Sweet Tooth Inc d/b/a Haagen Dazs Ice Cream v. The Hartford Financial Services Group, Inc. et al.,* No. 1:20-cv-22750-KMW (S.D. Fla.); *James R. Wright, D.M.D., P.S.C. et al v. The Hartford Financial Services Group, Inc. et al,* No. 1:20-cv-23253-BB (S.D. Fla.); *Blushark Digital, LLC v. The Hartford Financial Service Group, Inc., et al.*, No. 3:20-cv-08210 (D.N.J.); *Sweetberry Holdings, LLC v. The Hartford Financial Services Group, Inc., et al.*, No. 3:20-cv-08200-FLW-ZNQ (D.N.J.).

[2] Respondents are contemporaneously filing a Response to the Show Cause Order in *In Re: Certain Underwriters at Lloyd's, London Covid-19 Business Interruption Protection Litigation,* MDL No. 2961, where we respectfully requested that those cases be consolidated in a separate single jurisdiction. Lloyd's is not an admitted carriers who utilizes standard insurance forms issued by the U.S. Insurance Services Office ("ISO") and is the largest foreign surplus lines insurer in the United States.

**A. The Court Should Consolidate All Pending Lawsuits against the Hartford insurers, Cincinnati Insurance Company, and Society Insurance**

As explained by plaintiffs' counsel in prior briefing and at the hearing in MDL No. 2942, *In re COVID-19 Business Interruption Protection Insurance Litigation*, consolidation of all pending actions against insurers like the Hartford insurers, who have many cases pending against them across the country, will streamline motion practice, encourage consistent rulings on common legal questions, and support judicial efficiency and conservation of resources. Instead of transferring the Hartford, Cincinnati, and Society cases to three (3) different district courts, however, Respondents respectfully suggest that, as to these three national Admitted Carriers, consolidation can and should take place in just one jurisdiction to streamline the process and avoid duplicity, and the Respondents would respectfully suggest the District of New Jersey.

Admitted Carriers such as the Hartford insurers, Cincinnati, and Society, are licensed by the states and are required to use forms approved by each state's department of insurance. *See* Denise Johnson, *Understanding the Difference Between Standard and Excess/Surplus Lines*, Claims Journal (July 31, 2014), available at https://www.claimsjournal.com/news/national/2014/07/31/252642.htm. To comply with these regulations, these Admitted Carriers all utilize standard insurance forms issued by the U.S. Insurance Services Office ("ISO"), an organization located within ten miles of the federal courthouse in Trenton, New Jersey. Because these insurers all utilize ISO forms, the pertinent contractual provisions for business interruption losses are materially similar across all these policies.

For example, the Hartford insurers, Cincinnati, and Society all utilize insurance policies containing similar contractual provisions that provide coverage for losses resulting from orders of civil authorities which required businesses to close due to physical loss or physical damage caused

by the presence of COVID-19. The substantive provisions in these coverages are almost identical in all material respects[3] because they all utilize the same coverage form published by the ISO. *See* Douglas Berry, *COVID-19: When Civil Authorities Take Over, Are You Covered?*, International Risk Management Institute (March 2020), available at https://www.irmi.com/articles/expert-commentary/when-civil-authorities-take-over-are-you-covered (explaining that "the civil authority provision in the standard business income and extra expense coverage form" comes from ISO form CP 00 30 01 12). Consolidation will advance this litigation considerably by having a single Court determine whether these similar provisions provide coverage for losses sustained because of closure orders.

Another significant common issue across these cases is whether plaintiffs' businesses were closed because of "physical loss or physical damage." Consolidation will allow plaintiffs to pool their resources to present the Court with expert testimony from common epidemiologists demonstrating that physical loss or physical damage occurred in all places where COVID-19 was present. The first decision by the District Judge on these seminal issues will certainly provide guidance and structure for all of the remaining pending cases.

B. **The District of New Jersey is the Best Venue for Transfer**

Respondents respectfully suggest that the District of New Jersey, Trenton Division, is the best venue to transfer these cases.

The most important reason to select New Jersey is because the ISO, located in New Jersey, is not only the institution that created the forms used by all the Admitted Carriers, but also is

---

[3] Admittedly, there is one minor difference between the policies: Hartford's policies contain a 72-hour waiting period before coverage may be triggered, while Cincinnati's and Society's do not contain a waiting period. This one minor variation, however, does not contravene the fact that most of the substantive policy provisions establishing coverage are materially the same.

currently organizing the insurance industry to respond to (and create new exclusions to avoid liability for) the COVID-19 pandemic. *See* https://www.verisk.com/insurance/covid-19/ (last visited August 19, 2020) (indicating that ISO is holding its sixth roundtable for insurance companies to organize their responses to the pandemic). Discovery into the ISO's work and its forms, which will be of critical importance should parol evidence be admitted when interpreting the policies, will be greatly streamlined if these lawsuits are consolidated in the only district court with local jurisdiction over the ISO.

Judge Martinotti (and other judges in the District of New Jersey) are experienced in multi-district litigation, which is a pivotal factor in the Panel's analysis. *See In re Janus Mut. Funds Inv. Litig.,* 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) ("we have searched for a transferee district with the capacity and experience to steer this litigation on a prudent course."). The Panel has repeatedly recognized that the District of New Jersey has sufficient resources to handle complex cases and is geographically convenient. *See, e.g., In re Zimmer Durom Hip Cup Products Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010); *In re Tropicana Orange Juice Marketing and Sales Practices Litig.,* 867 F. Supp. 2d 1341 (J.P.M.L. 2012); *In re Vytorin/Zetia Marketing, Sales Practice and Products Liab. Litig.*, 543 F. Supp. 2d 1378 (J.P.M.L. 2008); *In re Insurance Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005); *In re Hypodermic Products Antitrust Litig.*, 408 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005).[4]

---

[4] The District of New Jersey in Trenton is conveniently located near several major airports, including those in Philadelphia, Newark, New Jersey, and New York, and offers numerous flight options. Trenton is also conveniently located on the Northeast Corridor train line that runs from Boston to Washington, D.C. *See In re Insurance Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) ("In concluding that the District of New Jersey is an appropriate forum for this docket, we note that i) the district offers an accessible metropolitan location that is geographically convenient for many of this docket's litigants and counsel; and ii) the district is equipped with the resources that this complex antitrust docket is likely to require.").

The District of New Jersey is an appropriate choice because Society, Hartford, and Cincinnati all have home offices relatively close to Trenton, New Jersey. *See In re Benicar (Olmesartan) Products Liab. Litig.*, 96 F. Supp. 3d 1381 (2015) (transferring to the district of New Jersey where several defendants were headquartered); *In re Am. Home Mortgage Sec. Litig.,* 528 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2007) (transferring to district where corporate defendant was headquarter[ed]" since "relevant documents and witnesses may be found there"). New Jersey is also in the region hit earliest and hardest by the COVID-19 pandemic, so there are many policyholders with claims from this area. Additionally, the ISO, which generated the standard forms for business interruption coverage utilized by these Admitted Carriers, is in New Jersey, and there will be much discovery concerning its forms. The fact that New Jersey is a "likely source of relevant documents and witnesses" makes it a strong choice for this MDL. *In re Marsh & McLennan Cos. Sec. Litig.*, 429 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006) (stating that district in which defendants were headquartered was a "likely source of relevant documents and witnesses"); *see also In re Air Crash Disaster at Sioux City*, 128 F.R.D. 131, 132 (J.P.M.L. 1989) ("relevant documents can likely be found within this district at [defendant's] headquarters").

Finally, due to its experience handling the thousands of federal claims filed due to flooding caused by Hurricane Sandy (which were consolidated in the Eastern District of New York and the District of New Jersey), the District of New Jersey is particularly experienced in handling large numbers of similar insurance claims based on a catastrophic event like the COVID-19 pandemic. The District of New Jersey adopted a uniform case management system that could resolve all Hurricane Sandy cases efficiently and expeditiously. *See* Hurricane Sandy Case Management Order No. 1, District Court of New Jersey, http://www.njd.uscourts.gov/sites/njd/files/SandyCaseManagementOrderNo1.pdf. Indeed, the

District of New Jersey, with the assistance of New Jersey Plaintiffs' counsel from the Merlin Law Group, crafted its case management order in contemplation of Federal Rule of Civil Procedure 16(b) to ensure "the just, speedy, and inexpensive" resolution of each case. The District of New Jersey also created a model "Final Pretrial Order" for use by the district court that would be useful in any hurricane case. Thereafter, the Eastern District of New York adopted New Jersey's consolidating model. *See* Case Management Order No. 1, *In re Hurricane Sandy Cases,* 14-mc-00041 (ECF 243:1);  Pollak, Reyes, Jr., and Weinstein, *"Hurricane" Sandy: A Case Study of the Eastern District of New York's Effort to Address Mass Litigation Resulting from the Effects of Climate Change*, 5 Tex. A&M J. Prop. L. 157 (2018). Similarly, the IAALS (Institute for the Advancement of the American Legal System) launched a new project to create Initial Discovery Protocols for COVID-19 Insurance Claims to develop pattern discovery protocols specific to COVID-19 cases, in an effort to reduce conflict and cost and to help both businesses and insurers alike reach a quick resolution. The District of New Jersey's proven track record in managing large and complex consolidated insurance claims makes it an ideal location to consolidate the Hartford, Cincinnati, and Society cases.

## CONCLUSION

For the foregoing reasons, Respondents respectfully suggest that the Panel transfer the Hartford, Cincinnati, and Society COVID-19 business interruption cases to the District of New Jersey for consolidated pretrial proceedings.

Respectfully submitted this 20th  day of August, 2020

By: */s/ Adam M. Moskowitz*

Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum

Florida Bar No. 93014
adams@moskowitz-law.com
Howard M. Bushman
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
New Jersey Bar No.  055182013
Florida Bar No.   364721
Shane S. Smith
ssmith@MerlinLawGroup.com
Florida Bar No. 53130
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

Rene M. Sigman, Esq.
Merlin Law Group
515 Post Oak Blvd., Suite 510
Houston, TX 77027

Office:713-626-8880

Email: rsigman@MerlinLawGroup.com

Michael Howard Moore, Esq.
Merlin Law Group
777 S. Harbour Island Blvd.
Suite 950
Tampa, FL 33602
Email: MMoore@merlinlawgroup.com Tel: (813) 229-1000
Fax:    (813) 229-3692