BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: HARTFORD COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION ) ) ) ) | MDL NO. 2963 LITIGATION |

RESPONSE OF PLAINTIFF BLACK MAGIC, LLC D/B/A BLACK MAGIC CAFÉ IN SUPPORT OF TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Pursuant to Rule 6.2(e) of the Rules of Civil Procedure of the United States Judicial Panel on Multidistrict Litigation ("the Panel"), Plaintiff Black Magic, LLC d/b/a Black Magic Café ("Black Magic") supports transfer and consolidation before the Panel, subject to the establishment of state-specific tracks.

On May 4, 2020, *Black Magic, LLC d/b/a Black Magic Cafe v. The Hartford Financial Services Group, Inc. and Twin City Fire Insurance Company*, Case No. 2:20-cv-01743-BHH (D.S.C.) (the "Black Magic Action") was filed in the United States District Court for the District of South Carolina, Charleston Division. The Black Magic Action is an insurance coverage dispute stemming from business income losses caused by COVID-19 and the civil authority orders issued in response.

Black Magic opposed transfer and consolidation in MDL No. 2942 (COVID-19 Business Interruption Protection Insurance Litigation) arguing, among other things, that its Hartford "Spectrum Business Owner's Policy" containing Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE") was so materially distinct on the question of virus coverage that consolidation with cases involving policies with the ISO "virus exclusion" (CP-01-40-07-06 ("EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA")) was not only inappropriate but potentially prejudicial.

However, Black Magic supports a Hartford-specific MDL due to the unique and proprietary insurance policies issues by the Hartford and its subsidiaries including, but not limited to, Twin City Fire Insurance Company. Black Magic respectfully requests the Panel establish state-specific "tracks" or other appropriate mechanisms, within the Hartford-specific MDL, to account for (1) unique facts and circumstances regarding each state's COVID-19 impacts and regulatory responses and (2) variation amongst state insurance coverage law. Such measures would blunt some, if not all, of the expected challenges to consolidation.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1407, the Panel has discretion to transfer and consolidate similar actions pending in different districts to maximize the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). The Panel and the transferee judge have discretion to fashion pretrial techniques, such as establishing separate discovery and motion tracks, to efficiently manage litigation. *See*, *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374 (J.P.M.L. 2011).

## II. ARGUMENT

### A. A Hartford-specific MDL comports with 28 U.S.C. § 1407.

Black Magic's "Spectrum Business Owner's Policy" containing Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE"), upon information and belief, is a standard, unique, and proprietary insurance policy sold across the United States. *See*, Hartford Explanatory Memorandum attached as **Exhibit A**. Notably, unlike the vast majority of other small business commercial property insurance policies in the United States, the aforementioned Hartford policies lack the infamous ISO "virus exclusion" (CP-01-40-07-06 ("EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA").

Consolidating the Black Magic Action with cases involving identical Hartford policies makes sense. These cases will share common discovery pursuits and challenges by the Hartford. For example, it is anticipated that plaintiffs' counsel will seek discovery on the origin of Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE") and Hartford's decision to exclude the ISO "virus exclusion" (CP-01-40-07-06 ("EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA")) from its "Spectrum Business Owner's Policy." Streamlining these discovery efforts will promote fairness, convenience, and efficiency.

These cases also overlap on pre-trial motion practice. The Hartford entities will almost certainly move for summary judgment in all cases on substantially similar grounds. A core issue will be whether the unique and proprietary Hartford policies provide coverage for COVID-19 related business income losses. This will call for, among other things, a legal interpretation of "physical damage" and "physical loss" in the COVID-19 context – not to mention the interpretation of Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE"). Consolidation will avoid inconsistent pre-trial rulings and achieve the convenience and efficiency contemplated by 28 U.S.C. § 1407.

For these reasons, Black Magic respectfully requests the Panel establish a Hartford-specific MDL, subject to the state-specific tracks discussed below.

**B.   State-specific Tracks, within the Hartford MDL, Ought to Be Established.**

Black Magic anticipates those opposing a Hartford-specific MDL will highlight certain empirical differences, from state to state, concerning the spread of COVID-19 and the timing and nature of government orders issued in response. These opponents may also point to variations between the states' statutory and common law on insurance coverage matters, specifically, and

breach of contract claims, generally. These variations are best addressed within a Hartford-specific MDL through state-specific "tracks."

While COVID-19 has impacted every state, it has not impacted every state the same way or at the same time. Moreover, governors and local governments have responded, from a regulatory standpoint, in different ways at different times. These facts are incontrovertible and deserve careful consideration as this litigation proceeds. However, they do not justify throwing the "MDL baby out with the bathwater." Ultimately, the similarities between the Hartford cases outweigh these differences, especially when these distinctions can be best addressed via the creation of state-specific tracks.

Similarly, each state's insurance laws may differ in materially significant ways. South Carolina, where Black Magic is located, has favorable pro-insured case law that may not exist elsewhere. For example, South Carolina recognizes the "illusory coverage doctrine," which protects insureds where the terms of the policy exclude from coverage "the very risk contemplated by the parties," rendering a policy provision "virtually meaningless." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 459 S.E.2d 318, 321 (S.C. Ct. App. 1994), *writ granted in part on other grounds, decision aff'd*, 321 S.C. 310, 468 S.E.2d 304 (1996); s*ee also S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 730 S.E.2d 862, 867 (2012) (explaining that "literal interpretation of policy language will be rejected where its application would lead to unreasonable results and the definitions as written would be so narrow as to make coverage merely illusory"). The "illusory coverage doctrine" will play a prominent role in litigating Black Magic's claims because Hartford has denied coverage for virus related loss, even though Black Magic's policy contains Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE").

For the foregoing reasons, the factual and legal variances from state to state justify the establishment of state-specific tracks within the Hartford MDL.

## CONCLUSION

Black Magic respectfully requests the Panel consolidate the Hartford cases, pursuant to 28 U.S.C. § 1407, and establish state-specific tracks.

Respectfully submitted,

**McCULLOUGH KHAN, LLC**

s/Ross A. Appel
Clayton B. McCullough, D.S.C. Fed. Bar # 7120
Ross A. Appel, D.S.C. Fed. Bar #11434
359 King Street, Suite 200
Charleston, SC 29401
(843) 937-0400
(843) 937-0706 (fax)
Clay@mklawsc.com
Ross@mklawsc.com

ATTORNEYS FOR PLAINTIFF
BLACK MAGIC, LLC

August 26, 2020
Charleston, South Carolina