**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: HARTFORD COVID-19 ) <br> BUSINESS INTERRUPTION ) <br> PROTECTION INSURANCE ) <br> LITIGATION ) | MDL Docket No. 2963 |

**INTERESTED PARTY RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiff in *The Seattle Symphony Orchestra v. Hartford Fire Insurance Co.*, No. 2:20-cv-01252-BAT (W.D. Wash.) files this response to the Panel's Order to Show Cause, issued in *In re Hartford Covid-19 Business Interruption Protection Insurance Litigation*, MDL No. 2963 (ECF No. 3). The Seattle Symphony opposes the transfer of its action for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. While transfer of other actions against the Hartford group of companies may be appropriate, the Seattle Symphony's action should not be included in the contemplated MDL proceeding due to the distinctive provisions of the policy it specially negotiated with Hartford. Further, the Seattle Symphony is closely tied to the Seattle area, unique among claimants, and does not share common facts with the other actions being considered for consolidation. Rather than promoting a just and efficient resolution of this action, transfer of this action would work against that goal.

**I.     INTRODUCTION**

The Seattle Symphony plays a central role in Seattle's cultural history, fulfilling a distinctive position in the city and its social and artistic environment. With the construction of its home, Benaroya Hall, the Seattle Symphony has been central to the revitalization of the city's downtown area. As a large employer whose programming touches over half a million Seattleites annually, the Symphony has suffered substantial losses in the wake of COVID-19; these losses are

1

expected to far exceed those experienced by other claimants, and threaten the Symphony's very survival.

Of critical importance to its request that the Panel decline to transfer this matter, the Seattle Symphony bargained for a unique Hartford policy that is distinct from the insurance policies underlying the other lawsuits in the proposed MDL. The Seattle Symphony's policy is an "all-risk" policy and contains specially-negotiated virus coverage endorsement, which will be at the heart of discovery in the Seattle Symphony's action against Hartford—and only that action.

The consolidation of the Seattle Symphony's action would not promote its efficient resolution. To the contrary, consolidation of the action for pretrial purposes would add an unnecessary layer of complication to an already-complex proceeding, slow the Symphony's unique discovery relating to its distinct policy, and—unless centralization is granted in Seattle, Washington—remove the dispute from the venue where most of the relevant information and witnesses reside.

## II.   ARGUMENT

Pursuant to 28 U.S.C. § 1407(a), transfer of actions pending in different judicial districts for coordinated or consolidated pretrial proceedings is appropriate when the actions involve "common questions of fact" such that transfer for coordinated pretrial proceedings will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Although coordinated or consolidated pretrial proceedings may be appropriate for many COVID-19 insurance actions, the Seattle Symphony is differently situated.

### A.   The Seattle Symphony Is a Unique Plaintiff with a Unique Policy

With a history extending back to 1903, the Seattle Symphony Orchestra (dba the Seattle Symphony) has been recognized as one of "the most vital American orchestras" (NPR). A charitable organization, the Seattle Symphony is internationally renowned for its live

performances, radio broadcasts, and community-minded initiatives, which reach over 500,000 people every year. The Seattle Symphony has a strong commitment to new music and a legacy of over 150 recordings on its Seattle Symphony Media label. The Seattle Symphony has garnered five Grammy Awards, twenty-six Grammy nominations, two Emmy Awards, and was named Gramophone's 2018 Orchestra of the Year. The Seattle Symphony's mission—"The Seattle Symphony Unleashes the Power of Music, Brings People Together, and Lifts the Human Spirit"—remains as important as ever in these challenging times.

As a result of its widespread success and its role as a Seattle institution, the Seattle Symphony is unique in the Seattle area and would be impossible to replace. The Symphony's importance, however, is more than cultural: it employs nearly 300 people, including from a number of different labor unions. Its continued operation is critical to its employees' livelihoods, many of whom have specialized talents related to the Symphony's musical mission. Due to the size and scope of activities at the Seattle Symphony, which have been brought to a standstill since mid-March, the losses sustained by the Seattle Symphony are substantial as compared to the losses at issue in the other actions pending against Hartford.

The Seattle Symphony performs in and operates Benaroya Hall in the heart of downtown Seattle. Built in 1998 and valued at an estimated $200 million, Benaroya Hall occupies an entire city block and features several performance venues, renowned art, public spaces, and several practice areas. It boasts performance venues capable of accommodating nearly 3,000 spectators and 100 musicians. Benaroya Hall is noted for its architecture, acoustics, and integration with the community of downtown Seattle. The Symphony's Benaroya Hall has been a driving force in the revitalization of the city's central core. Further to the community-centered focus of the Symphony, Benaroya Hall also features Octave 9: Raisbeck Music Center, a newly created, high tech,

immersive environment for inventive performances, education, and community engagement. Benaroya Hall, in short, is a cultural landmark that is critical to the vitality of Seattle's downtown.

Reflecting the dynamic nature and immense scope of its operations, the Seattle Symphony procured an "all-risk" policy that provides broad property and business interruption coverage except where excluded. Unlike the other actions being considered for consolidation, the Seattle Symphony does not have a standard-form Hartford business interruption policy. In fact, its policy contains a unique, Washington-specific virus endorsement that deletes any virus exclusion:

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# "FUNGUS", WET ROT, DRY ROT, BACTERIA AND VIRUS – REMOVAL OF LIMITATIONS – WASHINGTON

This endorsement modifies insurance provided under the following:

**PROPERTY CHOICE COVERAGE PART**

The following applies to insured risks situated in the state of Washington:
A. Applicable to the PROPERTY CHOICE COVERAGE FORM:
  1. Additional Coverage - "Fungus", Wet Rot, Dry Rot, Bacteria and Virus – Limited Coverage is deleted.
  2. Additional Coverage – Ordinace or Law – Ordinance or Law Exclusions (3) (a) and (b) as respects "Fungus", Wet Rot, Dry Rot, Bacteria and Virus do not apply.
B. Applicable to the PROPERTY CHOICE – COVERED CAUSES OF LOSS AND EXCLUSIONS FORM:
  Specific Exclusion - "Fungus", Wet Rot, Dry Rot, Bacteria or Virus is deleted.
C. Applicable to any Business Interruption Form:
  1. Additional Coverage - "Fungus", Wet Rot, Dry Rot, Bacteria and Virus – Limited Coverage is deleted.
  2. Additional Coverage - Ordinance or Law – Increased Period of Restoration – restrictions as respects "Fungus", Wet Rot, Dry Rot, Bacteria and Virus do not apply.
D. Applicable to the MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM:
  1. EXCLUSION - "Fungus", Wet Rot, Dry Rot, Bacteria or Virus is deleted.
  2. "Fungus", Wet Rot, Dry Rot, Bacteria and Virus – Limited Coverage is deleted.

The policy the Seattle Symphony negotiated with Hartford has no virus exclusion applicable to its loss. Rather, its unique virus *endorsement* separates the Seattle Symphony's action from the others subject to transfer.

**B.     The Seattle Symphony's Action Does Not Share Common Questions of Fact with the Other Hartford-Group Actions**

Centralization is appropriate when it "will eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel and the judiciary." *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015); *Manual for Complex Litigation (Fourth)* § 20.131 (2004) (listing four factors governing whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases: 1. The elimination of duplicative discovery; 2. The avoidance of conflicting rules and schedules; 3. The reduction of litigation cost; and 4. The conservation of the time and effort of the parties, attorneys, witnesses, and the courts (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968))).

Centralization of the Seattle Symphony's action would *not* eliminate duplicative discovery because its lawsuit is expected to focus on the virus endorsement, a provision that is not relevant to and will not be addressed in the other matters being considered for consolidation. The Panel has already heard, at length, about the common discovery that warrants centralization of COVID-19 business interruption insurance actions; this includes, among other things, documents relating to the interpretation of form policies, claims guidance, and the like. But these issues, which will be common to most standard-form business interruption policies, are not central to the Seattle Symphony's action.

Rather, the focus of the Seattle Symphony's action will be its specially-negotiated virus endorsement. It is well-settled that endorsements alter and modify the other provisions in an insurance policy. *See, e.g.*, 3 New Appleman on Insurance Law §§ 21.01[1], 21.02[2][a] (Jeffrey

5

E. Thomas & Francis J. Mootz III eds. (2010)) ("Endorsements are also often issued to modify or remove the effect of existing terms or exclusions contained in the policy form. In these instances, such an endorsement will supersede the term or exclusion in question."); Allan D. Windt, Insurance Claims and Disputes: Representation of Insurance Companies & Insureds § 6:2 (6th ed. 2013) (endorsements take precedence over the body of policy). This holds true under Washington law, which is highly developed in this area, and applicable to the Seattle Symphony's policy. *See Transcon. Ins. Co. v. Wash. Pub. Utils. Dist. Util. Sys.*, 111 Wn.2d 452, 462, 760 P.2d 337, 343 (1988). Here, the endorsement specifically states that it alters the policy, and therefore will control questions of coverage relating to the COVID-19 virus. *See id.*; *see also, e.g.*, *Nichols v. CNA Ins. Cos.*, 57 Wn. App. 397, 400, 788 P.2d 594, 597 (1990).

As a result, discovery in the Seattle Symphony's action will focus on the Washington-specific virus endorsement. In connection with the negotiation of that endorsement, many of the witnesses are expected to be in and around Seattle, including representatives of the Seattle Symphony (who are located in Seattle) and the Symphony's broker (who is also located in Seattle). Thus, the Seattle Symphony's action will diverge from other insurance claimants, involving discovery that is distinct from the other COVID-19 coverage actions. Under these circumstances, transfer of this action for coordinated proceedings would be inefficient.

**C.  Centralization of the Seattle Symphony's Action Would Not Promote its Just and Efficient Resolution**

Lacking common discovery with other COVID-19 business interruption claimants, transfer of the Seattle Symphony's action for coordinated or consolidated pretrial proceedings would not promote its just and efficient resolution. Because the Seattle Symphony must pursue discovery related to its unique virus endorsement, transfer would not reduce litigation cost, nor would it conserve time and effort for the parties, their counsel, or the courts. *See, e.g.*, *Manual for Complex*

*Litigation (Fourth)* § 20.131 (2004). There are thus no benefits to be gained from transfer of the Seattle Symphony's action for coordinated or consolidated pretrial proceedings.

Transfer here would slow the progress of the Seattle Symphony's action, increase the cost of litigation for this charitable organization, and impose greater burdens on the parties, witnesses, and the courts. Transfer of the Seattle Symphony's action likely would delay the unique and targeted discovery it seeks, putting at risk the viability of an irreplaceable Seattle icon. And, unless all actions against the Hartford group of companies are centralized in Seattle, Washington, transfer of the Seattle Symphony's action would *increase* the cost of litigation, given the location of relevant witnesses and the strong nexus of the Symphony's action to the venue of Seattle. Absent countervailing benefits from the perspective of litigation efficiency, transfer of the Seattle Symphony's action would threaten the timely and efficient resolution of its action and, thereby, threaten to impair its important work.

### III.   CONCLUSION

The Seattle Symphony requests that its action not be transferred for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).

RESPECTFULLY SUBMITTED this 26th day of August, 2020.

KELLER ROHRBACK L.L.P.

By *s/Ian S. Birk*
    Ian S. Birk, WSBA #31431
    Lynn Lincoln Sarko, WSBA #16569
    Amy Williams-Derry, WSBA #28711
    Gretchen Freeman Cappio, WSBA #29576
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Telephone: (206) 623-1900
    Fax: (206) 623-3384
    Email: ibirk@kellerrohrback.com
    Email: lsarko@kellerrohrback.com

Email: awilliams-derry@kellerrohrback.com
Email: gcappio@kellerrohrback.com

Alison Chase, CAB #226976
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Fax: (805) 456-1497
Email: achase@kellerrohrback.com

GORDON TILDEN THOMAS
& CORDEL LLP

Franklin D. Cordell, WSBA #26392
Kasey D. Huebner, WSBA #32890
One Union Square
600 University Street, Suite 2915
Seattle, WA 98101
Telephone: (206) 467-6477
Fax: (206) 467-6292
Email: fcordell@gordontilden.com
Email: khuebner@gordontilden.com

*Attorneys for Plaintiff*