BEFORE THE UNITED STATES JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE HARTFORD COVID-19      )          MDL No. 2963
BUSINESS INTERRUPTION        )
PROTECTION INSURANCE         )
LITIGATION                   )

### *LEVY/TAUBE* PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

This Response to the Order to Show Cause, Dkt. No. 2, is filed by four dental practices and

one orthodontics practice ("*Levy/Taube* Plaintiffs") that brought two insurance coverage cases

against Hartford in the Eastern District of Missouri and the Southern District of Illinois.[1] These

plaintiffs – which altogether comprise five dentists and two orthodontists – oppose transfer

because of fundamental factual differences among the cases subject to this Order, including

substantial differences between the *Levy/Taube* cases and many of the other cases.

Like many other businesses in the United States, the *Levy/Taube* Plaintiffs closed their

offices (except for the treatment of a few emergency patients) in March of this year due to the

COVID-19 pandemic and now seek coverage of their resulting losses under their business

insurance policies. But several factual distinctions set their cases apart from those of many other

Hartford plaintiffs. These differences mean that centralization would not "further the just and

efficient conduct of this litigation," just as in *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,

MDL 2942, 2020 WL 4670700, at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 12, 2020).

---

[1] *Robert A. Levy, D.M.D., LLC v. Hartford Casualty Insurance Company*, No. 4:20-cv-00643-SRC (E.D. Mo.), brought by Robert A. Levy, D.M.D. LLC ("Levy"); Vanessa N. Keller D.M.D. & Trisha M. Young D.M.D., P.C.; Rivka Goldenhersh D.M.D., LLC; and Farhad Moshiri and Mazyar Moshiri, D.M.D. M.S., P.C., and *Erik Taube, DMD v. Hartford Financial Services Group Inc.*, 3:20-cv-00565-SMY (S.D. Ill.), with Dr. Taube as the only plaintiff.

*First*, the policies of Hartford plaintiffs differ regarding Hartford's main defense in these cases, namely the so-called "Virus Exclusion." Some have no virus exclusion at all. The Virus Exclusions in the others differ in what they exclude, a distinction that has profound ramifications for the facts that will be at issue. *Second*, the reason the *Levy* Plaintiffs closed their businesses is different from many, probably most, other Plaintiffs, who were *ordered* to close by government mandate. The *Levy* Plaintiffs suspended their practices in response to the recommendations of the Centers for Disease Control ("CDC"), American Dental Association ("ADA") and other bodies. *Third*, some of the cases, including *Levy* and *Taube*, were brought against Hartford Financial Services Group, Inc. ("The Hartford"), the corporate parent of the other Hartford parties, and therefore have factual issues not present where that entity is not a party.

## I.    THE COURSE OF THE *LEVY/TAUBE* PROCEEDINGS

Plaintiff Robert A. Levy, D.M.D., LLC, a dental practice in St. Louis County, Missouri, filed its case against Hartford Casualty Insurance Company on May 14, 2020. It claimed that the defendant should have provided coverage for its lost business income and extra expenses when it closed the practice (except for emergencies), which it did, not because of a government order for there wasn't one in Missouri affecting dental practices, but because of the risk of continuing in practice during the pandemic and because of strong recommendations of the CDC, ADA, and the Missouri Dental Board. *See Levy*, Dkt. No. 1, Complaint ¶¶ 6, 36-41.

In response, the defendant moved to dismiss on the ground that coverage was excluded by the policy's Virus Exclusion.

On July 29, Plaintiff filed an amended complaint, in which the Keller, Goldenhersh and Moshiri plaintiffs joined the lawsuit. *Levy*, Dkt. No. 17. The Amended Complaint brought in these plaintiff's direct insurers, all part of the Hartford family, along with their parent, The Hartford. Inclusion of the parent was based in part upon the fact that Plaintiff Levy pays his

2

premiums with checks made out to "The Hartford" and that The Hartford publicly states,

"Companies have been protecting themselves in Missouri with business insurance from The

Hartford for hundreds of years." *Id.* ¶¶ 23, 28. Aside from that, the major change in the Amended

Complaint was to add factual allegations to support the position that the defendants should be

estopped from relying on the Virus Exclusion because they and their industry trade groups

misled state insurance regulators into approving the Exclusion in the mid-2000s by falsely

representing that the Exclusion was a mere "clarification." *Id.* ¶¶ 115-125. Specifically, the

companies claimed that the change was a clarification because "coverage for 'disease-causing

agents' ha[d] never been in effect, and was never intended to be included, in the property

policies." *Id.* ¶ 117. That representation was false because, as of that time, "courts had repeatedly

found that property insurance policies covered claims involving disease-causing agents, and had

held on numerous occasions that any condition making it impossible to use property for its

intended use constituted 'physical loss or damage to such property.'" *Id.* ¶ 121.

Presumably because these allegations created factual issues, the defendants did not renew their

motion to dismiss based on the Virus Exclusion. Instead, they answered the Amended Complaint.

The Hartford, however, moved to dismiss on grounds of personal jurisdiction, lack of standing, and

failure to state a claim, based upon its contention, in reliance on evidence such as its SEC filings and

a registered trademark, that it doesn't write insurance but is merely a holding company and had not

contracted with the plaintiffs. Dkt. #22. Plaintiffs have not yet responded to that motion.

Meanwhile, on June 15, 2020, Dr. Taube filed his case against The Hartford and its subsidiary

Twin City Fire Insurance Company. *Taube* Dkt. #1. The Hartford moved to dismiss on grounds

similar to those in *Levy*, and Twin City moved based on the Virus Exclusion. *Id.*, Dkt. Nos. 19 and

21. Dr. Taube amended his Complaint to add factual allegations supporting regulatory estoppel and

to make clear that – unlike Missouri dentists – he and other dentists in Illinois had been ordered to close, except for emergency treatments, by the Illinois Department of Public Health. *Id.* Dkt. No. 27.

## II.      ARGUMENT

### A.  Factual Differences Permeate These Cases

There are substantial factual differences between the *Levy/Taube* and the other lawsuits subject to the Show Cause Order. These differences relate to the Virus Exclusion, the reasons leading to the suspension of their businesses, and whether The Hartford is named as a defendant.

### 1.  Factual Differences Related to the Virus Exclusion

Not all of the policies that are at issue in these cases contain a Virus Exclusion, and those that do have Exclusions that differ.

For example, Hartford pointed out in MDL No. 2942 that some policies, such as the one in *Red Apple Dental PC v. The Hartford Financial Services Group, Inc.*, No. 7:20-cv-03549 (S.D.N.Y.), have no Virus Exclusion and that others, such as the Massachusetts policy in *Rinnigade Art Works v. The Hartford Financial Services Group, Inc. et al.*, No. 1:20-cv-10867 (D. Mass.), have state-specific provisions removing the Virus Exclusion.[2] Those cases will not involve factual issues regarding whether Hartford should be estopped from relying on it.

Moreover, there are differences in wording of the policies' Virus Exclusions that will lead to different factual issues. The *Levy/Taube* Exclusion states:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) *Presence*, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or *virus*.

---

[2] *See* Hartford's Interested Party Response in Further Opposition to Motions to Transfer Venue Pursuant to 28 U.S.C. § 1407, Dkt. No. 592 in MDL 2942, at 3.

*Levy*, Dkt. No. 17, ¶ 112; *Taube*, Dkt. No. 27, ¶ 78 (emphasis added). As can be seen, this

Exclusion requires the "presence" of the virus. But presence where? Logically, the presence must

be on the property of the insured because if Hartford had meant presence anywhere, it wouldn't

have used the word "presence." It would have simply said that coverage was excluded if the loss

was caused by a virus, period. In fact, that is exactly what it said in a few of its policies, like this

one from *SA Hospitality Group, LLC, et al. v. Hartford Financial Services Group, Inc. et al*, No.

1:20-cv-03258 (S.D.N.Y.):

> We will not pay for loss or damage caused by or resulting from any virus,
> bacterium or other microorganism that induces or is capable of inducing physical
> distress, illness or disease.

Dkt. No. 10-5 in MDL 2942 at 21 (presumably, the reference to "physical distress, illness or

disease" is to distinguish a disease-causing virus from a computer virus). *See also Lansdale 329

Prop, LLC, et al. v. Hartford Underwriters Insurance Company, et al.,* No. 2:20-cv-02034 (E.D.

Pa.) Dkt. No. 12-3 at 8 in MDL 2942 (similar).

In cases with the same "presence of virus" formulation as in *Levy* and *Taube*, the exclusion

only applies if Hartford (which, as the insurer, has the burden on the issue) can prove that the

virus was present in the insured's property. If Hartford can show that the virus was present, the

Exclusion applies. If not, it doesn't. But Hartford arguably need not show that in the other cases.

### 2.   Factual Issues Related to the Reason for the Business Closure

The original movants in MDL 2942 relied on government orders that compelled them to

close their businesses. They stated that they "seek recovery of the losses sustained by businesses

as a result of these government-mandated closures" and asserted that "all [actions] ultimately

share, and will share, [this] key core factual question – do the Governmental Orders trigger

coverage under the business interruption insurance policies ….?" Doc. #1-1 at 2, 5. But that is not

true of the *Levy* Plaintiffs and the class of Missouri dentists and orthodontists they seek to

represent. They were never ordered to close by a governmental body; instead, they closed because that was the only responsible action to take under the conditions of the COVID-19 pandemic, in light of recommendations of scientific authorities and their professional societies. *See* Amended Complaint in *Levy*, ¶¶ 6-9; 44-48.

The reason for these recommendations had to do with factors unique to dentists' offices. On March 16, the American Dental Association recommended that dental practices in the United States halt non-emergency procedures; the Centers for Disease Control followed with a similar recommendation two days later. *Levy* Amended Complaint, ¶¶ 51-52. Although neither body has authority to mandate compliance with its recommendations, the CDC explained that the recommendation was based on the unique risk of infection presented by dental instruments:

> These instruments create a visible spray that contains large particle droplets of water, saliva, blood, microorganisms, and other debris. This spatter travels only a short distance and settles out quickly, landing on the floor, nearby operatory surfaces, dental health care personnel (DHCP), or the patient. The spray also might contain certain aerosols.

*Levy* Amended Complaint ¶ 53.

Accordingly, CDC recommended that "[s]ervices should be limited to urgent and emergency visits …. These actions help staff and patients stay safe, preserve personal protective equipment and patient care supplies, and expand available health system capacity." *Id.* ¶ 55. The Missouri Dental Board, which regulates Missouri dentists, issued a similar recommendation. *Id.* ¶ 56.

The *Levy* Plaintiffs brought their cases as putative class actions on behalf of Missouri dentists and orthodontists, not other businesses. Their case therefore involves a unique factual question on which their insurance coverage turns: namely, whether the closure of their practices except for emergencies was justified in light of the recommendations of scientific and professional bodies and the unique risk of infection inherent in a dental practice. The many cases involving government orders will not involve that issue.

6

### 3.    Factual Differences Regarding the Liability of The Hartford

Many of these cases, like *Levy* and *Taube*, were brought against The Hartford, the parent of

the Hartford family of companies. They allege that The Hartford is liable because of a number of

factors, such as the references to "The Hartford" throughout the policies and that premiums were

invoiced by and paid to The Hartford. However, The Hartford is not a party to other cases.[3]

The Hartford moved to dismiss *Levy* and *Taube* on the ground that it is a mere holding

company and never entered into a contract with Plaintiffs. That presents a *factual* issue that will

have to be decided on summary judgment, as the court held in *Smith v. Sentinel Ins. Co., Ltd.*,

2010 WL 5174377, at *1 (N.D. Okla. Dec. 15, 2010) (using the company's acronym, HFSG):

> The contract is replete with references to both "The Hartford" and to "Sentinel
> Insurance Company's" ("Sentinel") role in the contract. (See Dkt. # 2–1, p.6–38).
> The complaint thus states a plausible claim that HFSG is a proper party defendant
> in this case. HFSG's arguments that "The Hartford" is merely a trade name, and
> that HFSG did not have sufficient involvement in the insurance claim to either be
> in privity or a special relationship are arguments better addressed on summary
> judgment. Therefore, the Motion to Dismiss (Dkt. # 16) is denied.

The court later reiterated its holding in *Smith v. Sentinel Ins. Co., Ltd.*, 2011 WL 2883433, at *1

(N.D. Okla. July 15, 2011):

> A major contention in this action is whether HFSG is a proper party Defendant.
> HFSG contends that it is not the Smiths' insurer and, furthermore, that it is not
> even an insurance company or insurer, that it does not write, underwrite or sell
> insurance policies and does not handle insurance claims or employ claims
> adjusters. More than a year ago, HFSG filed a Motion to Dismiss on this basis
> [Dkt. No. 16]. That Motion was denied on Dec. 15, 2010, with the caveat that the
> issue would be more appropriately addressed on summary judgment. [Dkt. No.
> 49]. … Thus, at this juncture and for purposes of this discovery dispute,
> HFSG *is* a party to this lawsuit and must respond to discovery as required by the
> Federal Rules of Civil Procedure.

---

[3] *See*, *e.g.*, *Geragos & Geragos Engine Company No. 28, LLC v. Hartford Fire Insurance Company, et al.*, C.A. No. 2:20–04647 (C.D. Cal.); *Protégé Restaurant Partners LLC v. Sentinel Insurance Company, Limited, C.A.,* No. 5:20–03674 (N.D. Cal.); *Consulting Advantage Inc. v. Hartford Fire Insurance Company*, C.A. No. 3:20-00610 (D.Conn.).

The Hartford's contention that it does not belong in these cases likewise raises factual questions. Those questions will only be present where The Hartford is a defendant.

### B.   These Factual Differences Require Denial of Centralization

As shown above, there are fundamental factual distinctions among these cases that mean that there are no significant "common questions of fact," as required by 28 U.S.C. § 1407(a). Indeed, the *only* common facts regarding whether the plaintiffs' losses are covered by the policies are that there was a worldwide pandemic of a disease called "COVID-19" that caused millions of cases of illnesses, killed well over a hundred thousand Americans, caused a huge number of businesses to shut down, and cost millions of people their jobs. But none of that is a "*question* of fact," because there are no disputes about it. We all know these things happened because we are all living through it. As in *In re COVID-19*, "differences will overwhelm any common factual questions." 2020 WL 4670700, at *2.

True, interpretation of identical provisions in the policies at issue will be common questions, but those are legal issues, not factual ones. Section 1407 calls on the Panel "to centralize actions based on '"one or more common questions of fact,' in contrast to common questions of law." *In re Uber Techs., Inc., Wage & Hour Employment Practices Litig. (No. II)*, 254 F. Supp. 3d 1376, 1378 (U.S. Jud. Pan. Mult. Lit. 2017).

### C.   In the Alternative, the MDL Should Be Centralized in the Eastern District of Missouri

In the alternative, should the Panel decide to centralize these cases, the *Levy/Taube* Plaintiffs suggest the Eastern District of Missouri as the appropriate transferee district. These are nationwide cases, and as the Panel stated in centralizing another MDL there, "[t]his district is a geographically central and accessible forum for this nationwide litigation*." In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (U.S. Jud. Pan. Mult. Lit. 2015).

*See also In re: Blue Buffalo Co., Ltd., Mktg. & Sales Practices Litig.*, 53 F. Supp. 3d 1385, 1386 (U.S. Jud. Pan. Mult. Lit. 2014) ("St. Louis also provides a geographically central location for this nationwide litigation."). In *In re Ashley Madison*, the Panel found that "[t]he Eastern District of Missouri also is relatively convenient for defendants, which are located in Toronto, Canada." 148 F. Supp. 3d at 1380. That is equally true of the Hartford defendants, located in Hartford, Connecticut.

Moreover, the Eastern District of Missouri has the capacity to handle these cases. In the period ending June 30, 2020, it had 417 pending cases per judgeship, ranking it 58th, roughly in the middle, among the country's 96 federal district courts. It moved its cases efficiently. Only 3.6% of its civil cases were over three-years old, the 16th best in the country. It had the shortest median time from filing to disposition of civil cases.[4]

If the Panel selects the Eastern District of Missouri, the *Levy/Taube* Plaintiffs suggest the Honorable Catherine D. Perry as the transferee judge. Judge Perry is an experienced jurist, including in MDL proceedings, and they respectfully suggest that she has the knowledge and ability to steer this litigation to a just conclusion.

## III.    CONCLUSION

The *Levy/Taube* Plaintiffs respectfully request that the Panel not transfer these cases to an MDL or, in the alternative, if it decides to do so, that it select the Eastern District of Missouri as the forum with Judge Perry as the transferee judge.

Dated: August 26, 2020                    Respectfully submitted,

                                          **LAW OFFICE OF RICHARD S. CORNFELD, LLC**
                                          By:  */s/ Richard S. Cornfeld*
                                               Richard S. Cornfeld 31046MO
                                               1010 Market Street, Ste 1645

---

[4] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf (accessed 8/24/2020).

St. Louis, MO 63101
P. 314-241-5799
F. 314-241-5788
rcornfeld@cornfldlegal.com

***On Behalf of***

ROBERT A. LEVY, D.M.D., LLC;
VANESSA N. KELLER D.M.D. & TRISHA M.
YOUNG D.M.D., P.C.;
RIVKA GOLDENHERSH D.M.D., LLC;
FARHAD MOSHIRI, AND MAZYAR MOSHIRI,
D.M.D., M.S., P.C., dba Moshiri Orthodontics; and
ERIK TAUBE, D.M.D.