# UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

IN RE: Hartford COVID-19 Business          )
Interruption Protection Insurance Litigation  )          MDL No. 2963

## HARTFORD'S RESPONSE IN OPPOSITION
## TO ORDER TO SHOW CAUSE PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 8.1(c) of the Rules of Procedure of the Judicial

Panel on Multidistrict Litigation, defendants The Hartford Financial Services Group, Inc. and

fifteen of its direct or indirect subsidiaries[1] (together, "Hartford") hereby submit this response to

the Panel's Order to Show Cause why property insurance coverage litigation against Hartford

relating to the COVID-19 pandemic should not be transferred to a multidistrict litigation

("MDL").

Hartford opposes centralization.  The coverage actions—even as to just Hartford—fail to

satisfy the requirements of 28 U.S.C. § 1407.  The MDL statute requires that actions to be

centralized "involv[e] one or more common questions of fact" and that centralization will

"promote the just and efficient conduct of such actions."  Centralizing here will satisfy neither

requirement.

The July 30, 2020 hearing on industry-wide centralization made clear that there are no

common questions of fact.  Despite being pressed repeatedly by members of the Panel, plaintiffs

supporting centralization could not identify even one material common question of fact.  Counsel

---

[1] The subsidiaries are Hartford Fire Insurance Company; Sentinel Insurance Company, Ltd.; Hartford
Casualty Insurance Company; Hartford Underwriters Insurance Company; Twin City Fire Insurance
Company; Trumbull Insurance Company; Property & Casualty Insurance Company of Hartford; Pacific
Insurance Company, Ltd.; New England Insurance Company; New England Reinsurance Corporation;
Hartford Insurance Company of Illinois; Hartford Accident & Indemnity Company; Hartford Insurance
Company of the Midwest; Hartford Insurance Company of the Southeast; and Hartford Lloyd's Insurance
Company, which is managed by its attorney-in-fact, Hartford Lloyd's Corporation, an indirect subsidiary
of The Hartford Financial Services Group, Inc.

for the lead party moving to transfer stated that "[t]he common issues of fact are whether or not there is property damage, does the virus get into the property.  Also, the exclusions are all the same…."  MDL No. 2942, Hr'g Tr., July 30, 2020, at 8; *id.* at 23 ("echo[ing]" the rationale provided by LH Dining's counsel).  But that is a legal question (premised on inaccurate facts, at that).  As Judge Kennelly stated: "The interpretation of a policy is not really a question of fact; right?"  *Id.* at 8.

The reason is simple:  there are no common questions of fact.  These actions involve different policyholders, with different businesses, with different insurance policies, governed by the laws of different states, who were impacted by COVID-19 and different governmental orders in different ways.  Just as the Panel stated with respect to industry-wide centralization:  "These differences will overwhelm any common factual questions."  *See* MDL No. 2942, Dkt. No. 772, at 2.  That alone is sufficient to decline centralization of the Hartford cases.  Indeed, individualized issues nearly always predominate in insurance coverage litigation.  That is why MDLs formed to resolve insurance coverage claims are exceedingly rare.  Only two MDLs have ever been formed to resolve coverage claims, and none in the last quarter-century.  *See* MDL No. 2942, Dkt. No. 376, at 2 n.2.

The Panel should also decline centralization because it will not "promote the just and efficient conduct" of the actions.  28 U.S.C. § 1407.  As of today, Hartford has 126 cases that will need to be resolved under the laws of at least 27 different states.  Individual judges deciding cases in their home jurisdictions will decide these actions with far greater speed than a single MDL judge tasked with sorting through a mountain of varying allegations and different state laws.  Four courts have already resolved COVID-19 business income lawsuits on dispositive motions.  Hartford anticipates that the same will be true in the 35 suits in which it has already

2

moved to dismiss or for judgment on the pleadings.  If "time is of the essence," as plaintiffs argued and the Panel recognized, allowing the cases to proceed in their home jurisdictions will far better satisfy that goal than centralization.  *See* MDL No. 2942, Dkt. No. 772, at 3.

Finally, the Panel noted that insurer-specific centralization "could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims."  *Id.* at 4.  Hartford respectfully suggests that there is no real likelihood of overlapping nationwide class claims. Nationwide class claims are highly unlikely to survive.  Indeed, Hartford has not identified a single action in which a federal court has certified a nationwide insurance coverage class.  The very same reasons that counsel against an MDL counsel against class certification—different policyholders in different industries, with different losses, under different policies, governed by laws of different states, and all in the context of particular local public health conditions. Further, the class claims against Hartford only share superficial commonalities.  A closer look reveals that there are significant differences among class definitions, such that there is little real overlap among them.

In short, with 126 current federal court cases against it, Hartford has every incentive to resolve those cases efficiently.  If centralization were the more efficient means of achieving a just outcome, Hartford would absolutely support it.  But centralization will hinder, not help. Accordingly, Hartford requests that the Panel deny certain plaintiffs' request to form a Hartford MDL.[2]

---

[2] In addition to the reasons stated herein, Hartford opposes centralization for all of the reasons it previously stated in MDL No. 2942.  Hartford incorporates herein the arguments made in its supplemental brief in response to the motions to transfer in MDL No. 2942, addressing a proposed Hartford-only MDL (MDL No. 2942, Dkt. No. 592), along with the arguments made by Defendants Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of North America (collectively, "Chubb") opposing centralization (MDL No. 2942, Dkt. No. 376).

I.      **BACKGROUND**

In April 2020, Plaintiffs in several insurance coverage cases relating to the COVID-19 pandemic moved to transfer their cases to an MDL.  MDL No. 2942, Dkt. Nos. 1, 4.  Among many interested party responses on June 5, a few plaintiffs suggested for the first time single-insurer MDLs as an alternative to an industry-wide MDL.  Three responses submitted by plaintiffs in Hartford cases suggested a "Hartford-only" MDL "in the alternative," although two of the three opposed any centralization.  MDL No. 2942, Dkt. Nos. 456, 462, 473.  Hartford opposed industry-wide transfer and also opposed the requests for a Hartford-only MDL.  MDL No. 2942, Dkt. Nos. 425, 592.  In short, there was very little support  by anyone—including policyholders—for a Hartford-only MDL.

On August 12, 2020, the Panel denied the motions to transfer, finding that the cases slated for transfer "entail[] very few common questions of fact, which are outweighed by the substantial convenience and efficiency challenges" posed by managing the requested MDL. MDL No. 2942, Dkt. No. 772, at 3.  The Panel, however, expressed its intent to consider further the single-insurer concept given the procedural posture in which the concept arose and directed the Clerk to issue show cause orders with respect to five would-be single-insurer MDLs, including one involving Hartford.  *Id.* at 3-5.[3]  The Clerk did that.  Dkt. No. 3.

---

[3] The Panel initially issued orders for four insurer-specific MDLs.  It granted one request for reconsideration and issued a fifth order to show cause as to business interruption suits against Travelers entities.  The Panel rejected two subsequent requests for orders to show cause as to single insurer MDLs for State Farm and Erie companies.

## II.    A HARTFORD-ONLY MDL WOULD HINDER THE EFFICIENT RESOLUTION OF LITIGATION

### A.    Common Questions of Fact Are Lacking

Insurance coverage actions typically present questions of law, and relevant facts are rarely common across actions.  As Judge Perry explained during the July 30 hearing:  "usually it's a matter of cross-motions for summary judgment and decide the legal issues, and there's not much discovery."  MDL No. 2942, Hr'g Tr., July 30, 2020, at 28.  That is true here too.  Hartford has already filed 35 dispositive motions to dismiss or for judgment on the pleadings, under the laws of 13 states.  As this Panel recognized on August 5: "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."  *See In re: Paycheck Protection Program (PPP) Agent Fees Litig.*, MDL No. 2950, Dkt. No. 356, at 3 (J.P.M.L. Aug. 5, 2020) (quoting *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp.3d 1353, 1356 (J.P.M.L. 2020)) (internal quotation marks omitted) (denying centralization on an industry-wide or defendant-specific basis).

Even if some (or even many of) the Hartford matters were to proceed beyond the initial pleadings stage, these coverage disputes still would be ill-suited to centralization because they do not involve common questions of fact.  An MDL is not appropriate where "individualized factual issues concerning the circumstances of each [individual action] will significantly diminish the potential efficiencies from centralization."  *In re: Bank of America Paycheck Protection Program Litig.*, MDL No. 2952, Dkt. No. 47 (J.P.M.L. Aug. 5, 2020).  Indeed, that is nearly always true with respect to insurance coverage litigation.  That is why only two MDLs have ever been formed to resolve insurance coverage claims, and none in the last quarter-century.  *See* MDL No. 2942, Dkt. No. 376, at 2 n.2.  Those outlier decisions have no relevance here because

each MDL involved only a single policyholder, who in each instance was party to a total of two actions concerning the same allegations.[4]

The Panel has otherwise declined to centralize coverage actions—even against a single insurer.  For example, in *In re Florida., Puerto Rico, & U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litigation*, plaintiffs sought to centralize cases pending in different states in which they alleged they suffered property damage as the result of hurricanes, and that their respective insurance companies breached the terms of the policies by settling claims for amounts lower than their actual losses.  The Panel denied centralization, concluding that, while the actions had a "superficial factual commonality," "[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages."  325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018); *see also In re The Great W. Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1371 (J.P.M.L. 2016) (denying motion to transfer actions against insurance company because the actions "involve no common factual issues aside from the broad fact that, in each action, a common insurance company has denied coverage of an insurance claim"); *cf. In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig*, 560 F. Supp. 2d 1374, 1376 (J.P.ML. 2008) (denying transfer because actions "encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state").

---

[4] *See In re White Consol. Indus., Inc., Envtl. Ins. Coverage Litig.*, 1994 WL 52568 (J.P.M.L. Feb. 16, 1994), at *1 (centralizing two actions at insurers' request that involved "the same parties, the same insurance policies, and the same allegations by [the policyholder] that its actual or potential liabilities for environmental contamination are covered"); *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 1988 U.S. Dist. LEXIS 17043 (J.P.M.L. May 31, 1988), at *2 (centralizing two actions where "the issue presented in both actions is whether Texas Eastern is entitled to liability insurance coverage for contamination of waste sites along its pipeline system").

A Hartford-only MDL would address none of the serious problems that make COVID-19 insurance coverage litigation a poor fit for multidistrict litigation.  A Hartford-only MDL would not eliminate but only *reduce* the variations in policy language at issue as compared to an industry-wide MDL.  The cases will still "involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states," all of which the Panel reasoned weighed against industry-wide centralization.  MDL No. 2942, Dkt. No. 772, at 2.  And the cases against Hartford will also need to be evaluated under "the laws of fifty states," (or at least 27 as of now), which the Panel recognized weighs against centralization.  *See id.* at 3 n.6.  Centralization also will not apply to state court cases, and Hartford presently has 29 cases in state court.

There are currently 126 federal actions pending against Hartford defendants.  The Hartford actions involve varied policy terms, the laws of at least 27 different states (without regard to unnamed purported class members), numerous orders of civil authority by state, county, and local governmental bodies, and policyholders engaged in a variety of different business activities.  *See also* MDL No. 2942, Dkt. No. 592, at 3-5 (detailing differences among various actions).

Moreover, the plaintiffs allege that their businesses have different operational statuses with differing implications for their insurance claims.  Some Hartford policyholders, such as certain restaurants, allege they are partially operational;[5] some, such as certain dental offices, allege they had almost no ability to work other than in the case of emergencies;[6] others, such as

---

[5] *See, e.g.*, MDL No. 2942, Dkt. No. 12-3 (Compl., *Lansdale 329 Prop, LLC, et al. v. Hartford Underwriters Insurance Company, et al.*, No. 2:20-cv-02034 (E.D. Pa.)).

[6] *See, e.g.*, MDL No. 2942, Dkt. No. 275-4 (Compl., *Red Apple Dental PC v. The Hartford Financial Services Group, Inc.*, et al., No. 7:20-cv-03549 (S.D.N.Y.)).

certain law firms, allege that they are operational but face limitations in their work;[7] and still others allege they ceased operations entirely.[8]  For cases that survive early dispositive motions and seek "civil authority" coverage, operational status will be a central issue.  While policy terms and applicable state laws may vary, mere limitations on access to premises generally are not enough to trigger coverage.  Rather, all access to the premises must be prohibited.

In addition to these factual differences, the plaintiffs' allegations against Hartford vary in fundamental respects.  For example:

- The plaintiffs allege different theories of causation and loss.  Plaintiffs in at least 20 cases allege that the presence of COVID-19 caused direct physical loss to the premises, whereas plaintiffs in approximately 97 cases allege that their losses were solely caused by precautionary state actions designed to slow the spread of the virus.  Still others allege some combination of the two.  And still others assert entirely different theories of causation and loss.

- Plaintiffs also assert different claims.  Plaintiffs in 20 cases seek only declaratory relief; plaintiffs in one case assert only contractual claims; plaintiffs in nine cases also assert claims for breach of the duty of good faith and fair dealing; and plaintiffs in two cases assert claims for violations of their respective states' unfair competition laws or state insurance codes.  These claims all have different elements, which will require discovery into—and proof of—different facts.

---

[7] *See, e.g.*, MDL No. 2942, Dkt. No. 205-3 (Compl., *Sidkoff, Pincus & Green PC v. Sentinel Insurance Company, Limited*, No. 2:20-cv-02083 (E.D. Pa)).

[8] *See, e.g.*, MDL No. 2942, Dkt. No. 177-6 (Compl., *Consulting Advantage Inc. v. The Hartford Fire Insurance Company, et al.*, No. 3:20-cv-00610 (D. Conn.)).

The Hartford matters simply do not present the "common questions of fact" MDLs are designed to address.

No party has been able to identify a single set of common discovery among the policyholders.  While plaintiffs at the July 30 hearing suggested epidemiological evidence regarding the presence of the virus might be common, the Panel rightly expressed skepticism.  Judge Huvelle noted that "[i]n terms of the property damage, I don't quite understand why everything on the ground is the same.  Doesn't it kind of vary about how much COVID there was somewhere, how long the exposure was, how much of interruption there was, what the state ordered, et cetera? I don't understand how it is a common issue across all cases."  MDL No. 2942, Hr'g Tr., July 30, 2020, at 24.  In addition, Hartford policyholders will take varying positions with respect to the presence (or absence) of the virus on their premises.  Some policyholders expressly disavow the presence of the virus while others expressly allege its presence.[9]  This is not surprising given the various operational statuses—a partially operational policyholder, such as a restaurant or dentist, would not be expected to argue that the virus was present on their properties.

The only purported factual commonality among these claims is that a Hartford entity issued the policies.  But that will have little to no impact on discovery in these cases.  Discovery will be policyholder and locality-focused, not Hartford-focused.  Discovery is likely to focus on the policyholder's claim and specific policy, including the nature of the policyholder's business, how the business was affected by the pandemic and any resulting civil authority orders, the

---

[9] *Compare Lansdale 329 Prop, LLC, et al. v. Hartford Underwriters Ins. Co.*, No. 2:20-cv-02034, Dkt. No. 1, at 7 (E.D. Pa. Apr. 27, 2020) ("There was no presence of the COVID-19 virus at Plaintiffs' Covered Properties.") *with Siegel & Siegel, P.C. v. Hartford Casualty Ins. Co.*, No. 20-cv-04993, Dkt. No. 1, at 4 (S.D.N.Y. Jun. 29, 2020) (alleging "the property… has been infected with COVID-19").

presence of the virus at the business's premises, the business's operational status over time, and the business's operating expenses and lost profits, if any, during the relevant period. These questions are specific to each policyholder—not common factual questions suited for centralization. Even the most diligent MDL judge could not be expected to resolve them with respect to every one of over 125 cases, and doing so would introduce drastic delays.

In short, the Hartford actions simply do not meet the statutory requirement of "common questions of fact." The claims will be individual in nature.

**B.      Centralization Will Be Neither Efficient Nor Convenient**

In the order denying industry-wide centralization, the Panel observed that "time is of the essence" with respect to COVID-19 business interruption claims. MDL No. 2942, Dkt. No. 772, at 3. But centralization of the Hartford COVID-19 insurance coverage actions will not promote speed, efficiency, or convenience. Rather, it will likely delay resolution of actions suited for dispositive motions to dismiss or for summary judgment, increasing the burden on the judicial system and leaving Hartford and its policyholders in limbo as they await a single MDL judge's consideration of coverage questions—on a case-by-case, state-by-state, and/or business-by-business basis.

Allowing cases to be decided by the courts in which they are pending is a better use of judicial resources. Rather than have one federal judge answer every legal question for every policy in every state for every case, it would be faster and more efficient for the judges in a particular district to decide the limited set of cases presented to them. In most instances, the judges will be applying the law of the jurisdiction in which they are located and, if needed, analyzing the civil authority orders for their specific areas. No speculation is needed on this point: four courts have already dismissed insurance coverage business interruption claims

arising from COVID-19.[10]  Allowing the cases to proceed in this manner will also permit real-time appellate guidance—either by federal courts or by state courts on certified questions—for the remaining COVID-19 actions.

To the extent coordination in a particular district were needed, there are existing mechanisms the parties could utilize, such as related case designation; coordinated discovery; or agreement by the parties to treat certain cases as "lead" cases.  Hartford would utilize those mechanisms where appropriate—as the common defendant in these actions, it has every incentive to seek efficiency.

Indeed, Hartford already has been expeditiously moving its cases forward to resolution. Hartford has filed 33 dispositive motions to dismiss or for judgment on the pleadings in COVID-19 cases, and anticipates filing additional such motions.  Five of those dispositive motions are fully briefed, and a number are already scheduled for oral argument in the near term.   In a approximately 10 additional cases, Hartford's dispositive motions would have been fully briefed had plaintiffs not filed intervening amended complaints or voluntarily dismissed their actions. Hartford has taken other actions to move its cases forward:  Hartford has held at least nine Rule 16 conferences; answered in 40 cases; and moved to dismiss nationwide class claims in 12 cases. To halt the progress of these varied cases in their home jurisdictions, and to force a single jurist to wade through them all, would hinder, not aid, efficiency.  By way of example, in *In re: National Football League Players' Concussion Injury Litigation*, the Panel ordered

---

[10] *Gavrilides Mgmt. Co., et al. vs. Michigan Ins. Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cnty.), Hr'g Tr., Jul. 1, 2020; *The Inns By The Sea v. California Mutual Ins. Co.*, No. 20-CV-001274 (Cal. Sup. Ct., Monterey Cnty.) (Aug. 6, 2020); *Rose's 1, LLC, et al. v. Erie Ins. Exch.*, No. 2020 CA 002424 B (D.C. Sup. Ct.) (Aug. 6, 2020); *Diesel Barbershop, LLC, et al. v. State Farm Lloyds*, No. 5:20–CV–461–DAE (W.D. Tex.), Dkt. No. 29 (Aug. 13, 2020).

centralization on January 31, 2012.  MDL No. 2323, Dkt. No. 28.  The master administrative

complaint in the MDL was not filed until June 7, 2012, and defendants did not move to dismiss

until August 30, 2012—seven months after centralization.  *Id.*, Dkt. Nos. 83, 3589, 3590, 3591,

3592.  Here, a wide swath of cases could be *resolved* within seven months in their home

jurisdictions; but if they are centralized, an MDL would likely just be getting off the ground

when that period elapses.

In addition, centralization of cases against Hartford will not be convenient for the parties,

nor will it reduce the costs of litigation.  Any Hartford MDL will likely last well beyond the

effective date of stay-at-home orders, and forcing parties from around the country to travel to a

single jurisdiction will be inconvenient for the vast majority of them.  In addition, centralization

will uproot localized disputes, predominantly from the jurisdictions where the policyholders are

located and where much of the evidence is located.

As testament to the problems of centralization, many of the plaintiffs in cases against

Hartford do not favor creation of a Hartford-only MDL.  Of the 13 briefs filed by Hartford

policyholders responding to the industry-wide MDL No. 2942, only three favored centralization

at the single-insurer (Hartford only) level.[11]   And two of those three briefs opposed any

centralization; the Hartford-only MDL was only a fallback position.  MDL No. 2942, Dkt. Nos.

417, 456 (fallback), 473 (fallback).  With respect to the current order to show cause, Plaintiffs in

two other actions against Hartford have stated in recent submissions that they will oppose a

Hartford-only MDL.[12]  Simply put, it is unclear whose "convenience" a Hartford-only MDL

would favor.

---

[11] A brief filed by a non-Hartford policyholder favored a Hartford only MDL too.

[12] *Robert A. Levy, D.M.D., LLC, et al. v. Hartford Financial Services Group Inc, dba The Hartford, et al.*,
No. 4:20-cv-00643, Dkt. No. 26 (E.D. Mo. Aug. 19, 2020); *Erik Taube, DMD, dba Taube Family Dental*

To the contrary, an MDL will have the opposite of its intended effect—it will not be "for the convenience of parties and witnesses" and will not "promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407(a).  A Hartford MDL will needlessly stall cases that are well underway and, in many instances, could be resolved before the end of the year.  For these reasons too, centralization should not occur.

### C.      Multiple Class Actions Do Not Warrant Centralization

The Panel stated in its order denying industry-wide centralization that centralization at the single-insurer level "could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims."  *See* MDL No. 2942, Dkt. No. 772, at 3.   But the existence of putative class actions does not obviate the threshold statutory requirement that the actions share common issues of fact—none of which exist, for all of the reasons explained above.

The existence of overlaps among putative class actions, standing alone, is insufficient to justify centralization.  For example, in *In re Urban Outfitters FLSA Litigation*, plaintiffs alleged a retailer unlawfully denied employees compensation for overtime.  987 F. Supp. 2d 1381 (J.P.M.L. 2013).  Despite overlaps among six putative classes, the panel denied centralization, because the overlaps did not "outweigh the other factors that favor denial," including that "while all the plaintiffs allege that they were denied overtime, their allegations otherwise differ markedly from action to action."  *Id.* at 1382.

Cases in which the Panel has centralized litigation that include overlapping class actions are easily distinguishable.  They have involved the kind of substantial common questions of fact

---

*v. Hartford Financial Services Group Inc, dba The Hartford, et al.*, No. 3:20-cv-00565, Dkt. No. 24 (S.D. Ill. Aug. 19, 2020).

not present here, and/or the parties consented to centralization. For example, in *In re Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, the cases shared factual questions arising from allegations that a product marketed by the defendant was unsafe, and pretrial proceedings were "likely to involve relatively complex causation issues necessitating extensive common expert discovery and one or more *Daubert* hearings." 412 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019); *see also In re Bank of America Home Affordable Modification Program Contract Litig.*, 746 F. Supp. 2d 1359 (JPML 2010) ("No party disputes that the putative class actions should be centralized."); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 410 F. Supp. 3d 1357, 1359 (J.P.M.L. 2019) (ordering centralization where the actions shared "factual issues arising from allegations that airbag control units manufactured by the ZF-TRW defendants are defective" in a particular way); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d 1354 (J.P.M.L. 2016) (ordering centralization where the actions shared "complex factual questions arising out of allegations that [a gearshift installed in vehicles manufactured by the defendant] is defective and unreasonably dangerous").

In any event, the issue of overlapping class actions here is largely illusory. The purported class actions against Hartford are largely <u>not</u> overlapping. Where class definitions do overlap, it often appears to be an intentional strategy by plaintiffs' counsel. Such overlapping cases often involve the same plaintiffs' counsel who file the cases and then refuse to prosecute them. For example, proponents of centralization would have the Panel count five cases filed in the Western District of Washington as five separate putative nationwide class actions. But those cases were filed by the same plaintiffs' counsel, with nearly identical allegations and class definitions. In each case, counsel immediately moved for a stay pending this Panel's decision in MDL 2942.[13]

---

[13] *See Arnell Prato, DDS, PLLC v. Sentinel Ins. Co. Ltd.*, No. 3:20-cv-05402 (W.D. Wash.); *Mario D. Chorak, DD, P.S. v. Hartford Casualty Insurance Company*, No. 2:20-cv-00627 (W.D. Wash.); *Glow*

There is no indication these five actions will be prosecuted as separate class actions if the Panel denies consolidation.  Many other examples fit this pattern, such as another plaintiffs' counsel who filed three nearly identical suits in California, New Jersey, and New York,[14] and a third plaintiffs' counsel who filed three nearly identical suits in the Southern District of Florida.[15]  In some cases, where courts denied requests to stay, those plaintiffs dismissed their cases voluntarily and refiled elsewhere rather than respond to Hartford's dispositive motion.[16]

These tactics reflect Plaintiffs' acknowledgement that nationwide class actions will not be viable, and where they have filed overlapping claims within a single jurisdiction, judge shopping.  Plaintiffs' counsel should not be permitted to game the system by filing multiple class actions, and then asserting that the litigation must be centralized because of the multiplicity of their filings.  *Cf. In re: LVNV Funding, LLC, Fair Debt Collection Practices Act (FDCPA) Litig.*, 96 F. Supp. 3d 1374, 1375 (J.P.M.L. 2015) ("The overlap between the classes asserted in the actions pending in the Southern District of Texas can be disregarded because the same plaintiff brought each of those actions.").  Stripping away the duplicative actions filed by the exact same law firms would eliminate at least 10 class actions of the total 44 Hartford presently faces.

---

*Medispa, LLC v. Sentinel Insurance Company, Limited*, No. 2:20-cv-00712 (W.D. Wash.); *Lina Kim, DDS, P.S. v. Sentinel Insurance Company Limited*, No. 2:20-cv-00657 (W.D. Wash.); *Andrew Lee, DDS v. Sentinel Insurance Company, Limited*, No. 3:20-cv-05422 (W.D. Wash.)

[14] *See Pigment Inc. v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 3:20-cv-00794 (S.D. Cal.); *The Eye Care Center of New Jersey, PA v. The Hartford Financial Services Group, Inc., et al.*, No. 2:20-cv-05743 (D.N.J.); *SA Hospitality Group, LLC v. Hartford Financial Services Group, Inc.*, No. 1:20-cv-03258 (S.D.N.Y.).

[15] *See Go-4 Nuge Production Rentals LLC v. The Hartford Financial Services Group, Inc., et al.*, No. 1:20-cv-22749 (S.D. Fla.); *Sweet Tooth Inc. d/b/a Haagen Dazs Ice Cream v. The Hartford Financial Services Group, Inc., et al.*, No. 1:20-cv-22750 (S.D. Fla.); *James R. Wright, D.M.D., P.S.C. v. The Hartford Financial Services Group, Inc., et al.*, No. 1:20-cv-23253 (S.D. Fla.).

[16] *See SA Hospitality Group, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-03258, Dkt. No. 36 (S.D.N.Y. Jul. 22, 2020); *SA Hospitality Group, LLC, et al. v. Hartford Fire Ins. Co.*, No. 3:20-cv-01033, Dkt. No. 1 (D. Conn. Jul. 22, 2020).

While the quantity of class actions against Hartford superficially appears problematic, a closer analysis demonstrates that it is not.  First, the classes are far from uniform; most involve unique classes along one or more dimensions.  Many plaintiffs propose classes limited by geography[17] or subclasses limited by geography.[18]  Plaintiffs have also limited their proposed classes by industry;[19] by the particular Hartford writing entity;[20] by the policy provision alleged to provide coverage;[21] by the lack of certain policy exclusions;[22] and/or by the alleged cause of

---

[17] *See, e.g.*, *Firenze Ventures LLC d/b/a Firenze Italian Street Food v. Twin City Fire Ins. Co.*, No. 20-cv-04226 (N.D. Ill.) (limiting class to Illinois plaintiffs); *GCDC LLC d/b/a GCDC Grilled Cheese Bar v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-01094 (D.D.C.) (limiting class to Washington, D.C. plaintiffs); *Oaklandish, LLC v. Sentinel Ins. Co., Ltd.*, 3:20-cv-04856 (N.D. Cal.) (limiting class to California plaintiffs); *Arnell Prato, DDS, PLLC v. Sentinel Ins. Co. Ltd.*, No. 3:20-cv-05402 (W.D. Wash.) (limiting class to plaintiffs in the State of Washington); *Pigment Inc. v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 3:20-cv-00794 (S.D. Cal.) (limiting class to plaintiffs with property insured in California).

[18] *See, e.g.*, *Andrew Lee, DDS v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-05422 (W.D. Wash.) (Washington State subclass); *Baked Daily Corp. dba Panificio v. Hartford Fin. Servs. Grp., Inc., et al.*, No. 20-cv-11385 (D. Mass.)(Massachusetts subclass); *The Eye Care Center of New Jersey, PA v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-05743 (D.N.J.) (New Jersey subclass).

[19] *See, e.g.*, *GCDC LLC d/b/a GCDC Grilled Cheese Bar v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-01094 (D.D.C.) (limiting class to restaurants); *Oaklandish, LLC v. Sentinel Ins. Co., Ltd.*, 3:20-cv-04856 (N.D. Cal.) (limiting class to retailers); *Baked Daily Corp. dba Panificio v. Hartford Fin. Servs. Grp., Inc., et al.*, No. 20-cv-11385 (D. Mass.)(limiting class to plaintiffs who "own an interest in a business that served food and beverages on the premises").

[20] *See, e.g.*, *Andrew Lee, DDS v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-05422 (W.D. Wash.) (limiting class to Sentinel policyholders); *Cosmetic Laser, Inc., v. Twin City Fire Ins. Co.*, No. 3:20-cv-00638 (D. Conn.) (limiting class to Twin City policyholders); *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, No. 3:20-cv-00640 (D. Conn.) (limiting class to Hartford Casualty policyholders).

[21] *See, e.g.*, *Back2Health Chiropractic Ctr., LLC v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-06717 (D.N.J.) (limiting class to plaintiffs with Business Income coverage); *Andrew Lee, DDS v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-05422 (W.D. Wash.) (limiting class to plaintiffs with Extra Expense coverage); *Back2Health Chiropractic Ctr., LLC v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-06717 (D.N.J.) (limiting class to plaintiffs with Civil Authority coverage); *Blushark Digital, LLC v. Hartford Fin. Servs. Grp., Inc., et al.*, No. 3:20-cv-08210 (E.D.N.Y.) (limiting class to plaintiffs with Business Income from Dependent Property coverage); *Firenze Ventures LLC d/b/a Firenze Italian Street Food v. Twin City Fire Ins. Co.*, No. 20-cv-04226 (N.D. Ill.) (limiting class to plaintiffs with policies providing "express coverage for 'virus'"); *Black Magic, LLC d/b/a Black Magic Cafe v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-01743 (D.S.C.) (limiting class to plaintiffs with policy that contains Form SS-40-93-07-05).

[22] *See, e.g.*, *Baked Daily Corp. dba Panificio v. Hartford Fin. Servs. Grp., Inc., et al.*, No. 20-cv-11385 (D. Mass.) (limiting class to plaintiffs whose policies do not have "an express virus or pandemic

loss,[23] among other factors.

Second, even those remaining overlaps are unlikely to survive, because many are related to nationwide classes.  Nationwide class actions are disfavored, a concern that is particularly relevant with respect to insurance coverage litigation that demands the individual application of the insurance law of each state governing a policyholder's claims.  *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts.")  Hartford has already filed 12 motions to dismiss nationwide class claims, and succeeded on one.[24]

Even if the nationwide class claims are not dismissed at the pleadings stage, they are highly unlikely to result in class certification.  Hartford is not aware of a single decision in which a federal court has certified a nationwide class action with respect to insurance coverage.  Simply put, creating an MDL because of "overlapping nationwide class claims" would be a solution in search of a problem.

---

exclusion"); *Buffalo Xerographix Inc. v. Sentinel Ins. Co., Ltd., et al.*, No. 1:20-cv-00520 (W.D.N.Y.) (limiting class to plaintiffs whose policies "do not contain the Virus Exclusion or a substantially similar exclusion for a virus as an endorsement"); *The Eye Care Center of New Jersey, PA v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-05743 (D.N.J.) (limiting class to plaintiffs whose policies "do not exclude coverage for pandemics").

[23] *See, e.g.*, *Blushark Digital, LLC v. Hartford Fin. Servs. Grp., Inc., et al.*, No. 3:20-cv-08210 (E.D.N.Y.) (limiting class to plaintiffs who "suffered a suspension of business due to COVID-19 at the premises"); *Fancy That! Bistro & Catering LLC v. Sentinel Ins. Co. Ltd., et al.*, No. 3:20-cv-02382 (D.S.C.) (limiting class to plaintiffs who suffered "s suspension of business resulting from the presence or threat of COVID-19"); *Back2Health Chiropractic Ctr., LLC v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-06717 (D.N.J.) (limiting class to plaintiffs who suffered losses "caused by an order of a civil authority that specifically prohibited access to the premises"); *Baked Daily Corp. dba Panificio v. Hartford Fin. Servs. Grp., Inc., et al.*, No. 20-cv-11385 (D. Mass.) (limiting class to plaintiffs who suffered losses "caused by an action of a civil authority").

[24] *Black Magic, LLC d/b/a Black Magic Cafe v. The Hartford Fin. Servs. Grp., Inc., et al.*, No. 2:20-cv-01743 (D.S.C.) (dismissing nationwide class claims where plaintiffs did not oppose motion).

Once the duplicative and nationwide putative class actions are stripped away, Hartford will be left with, at most, only a few cases where there could be intra-state overlaps—assuming Hartford's motions to dismiss for lack of coverage are not granted (of which Hartford has filed 17 in class actions) and assuming the class otherwise survives judicial scrutiny.  Those are two big assumptions.  But even making them, informal coordination would be a far better mechanism for judges in a particular state or district to coordinate as needed.  Tools such as the first-filed rule and related case designation can help mitigate risks of inconsistent outcomes.

Given this context, it is clear that using overlapping putative class actions as the justification for centralization would be the tail wagging the dog.

## III.   IF THE PANEL CREATES A HARTFORD-ONLY MDL, THE SOUTHERN DISTRICT OF NEW YORK WOULD BE A SUITABLE FORUM

Hartford does not believe a Hartford-only MDL would serve the efficient resolution of this litigation.  However, in the alternative, if the Panel nonetheless chooses to create a Hartford-only MDL, the U.S. District Court for the Southern District of New York would be a suitable forum.

New York is the largest market for Hartford entities in the Northeast for the relevant policies.  The Southern District of New York is an efficient docket, with median time from filing to disposition in civil cases of only 6.4 months, well below the nationwide average of 9.3 months.[25]  The Southern of District of New York is also accustomed to handling highly complex litigation and has been the site of 172 completed MDLs, with 17 more currently pending.[26]

---

[25] U.S. Courts, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (Mar. 31, 2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2020.pdf; U.S. Courts, U.S. District Courts–National Judicial Caseload Profile (Mar. 31, 2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf.

[26] *See* U.S. Judicial Panel on Multidistrict Litig., Multidistrict Litigation Terminated Through September 30, 2019, *available at*

Furthermore, the Southern District of New York would be among the more convenient locations for litigants and their counsel.  It is adjacent to Hartford's home district.  Hartford presently has 10 cases pending against it in New York, and New York City is the nation's largest city and its metropolitan area is home to three major airports—which will become necessary, given that consolidation is likely to drag out the ultimate resolution of these cases into a time when in-court appearances resume.[27]

In particular, Hartford believes Judge Valerie E. Caproni would be well-equipped to manage this litigation.  Judge Caproni is an able and respected jurist who has been on the bench since 2013.  Judge Caproni has significant experience with insurance cases[28] as well as experience managing MDLs.[29]

## IV.    CONCLUSION

For all of the foregoing reasons and those Hartford expressed in MDL No. 2942, Hartford respectfully requests that the Panel decline to transfer the Hartford COVID-19 insurance

---

https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf; U.S. Judicial Panel on Multidistrict Litig.MDL Statistics Report - Distribution of Pending MDL Dockets by District (Aug. 17, 2020), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-17-2020.pdf.

[27] None of the three fora proposed by plaintiffs in MDL 2942—the U.S. District Court for the District of Massachusetts, the U.S. District Court for the Southern District of Florida, or the U.S. District Court for the Eastern District of Pennsylvania—would be appropriate fora for this litigation.  Only three actions are pending in the District of Massachusetts.  Neither the District of Massachusetts nor the Southern District of Florida is particularly convenient for litigants and their counsel located across the country.  As counsel conceded at oral argument in July: "[T]he case for Florida is much weaker with respect to Hartford."  MDL No. 2942, Hr'g Tr., July 30, 2020, at 44.  The number of cases pending against Hartford in Pennsylvania is artificially inflated by the same plaintiffs' firms and is not reflective of Hartford's book of business.  Further, Pennsylvania is far less convenient for Hartford than New York.

[28] *See, e.g., Jones v. UnitedHealth Group, Inc., et al.*, No. 19-CV-7972 (VEC), 2020 WL 4895675 (S.D.N.Y. Aug. 19, 2020); *Patriarch Partners, LLC v. AXIS Ins. Co.*, No. 16-CV-2277 (VEC), 2017 WL 4233078 (S.D.N.Y. Sept. 22, 2017), *aff'd*, 758 F. App'x 14 (2d Cir. 2018); *Ling v. Erie Ins. Co.*, No. 16-CV-5281 (VEC), 2017 WL 3084420, at *8 (S.D.N.Y. July 19, 2017).

[29] *See In re: Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 1:14-md-2548 (S.D.N.Y.); *In re: London Silver Fixing, Ltd., Antitrust Litig.*, No. 1:14-md-2573 (S.D.N.Y.).

coverage actions into an MDL.  In the alternative, if the Panel decides to centralize these actions, Hartford respectfully requests that the actions be centralized before Judge Valerie E. Caproni in the Southern District of New York.

August 26, 2020                                                Respectfully submitted,

                                                                      /s/ Sarah D. Gordon
                                                                      STEPTOE & JOHNSON LLP
                                                                      Sarah D. Gordon
                                                                      sgordon@steptoe.com
                                                                      Frank Winston, Jr.
                                                                      fwinston@steptoe.com
                                                                      1330 Connecticut Avenue NW
                                                                      Washington, D.C. 20036
                                                                      Phone: (202) 429-3000
                                                                      Fax: (202) 429-3902

                                                                      STEPTOE & JOHNSON LLP
                                                                      Justin Ben-Asher
                                                                      jbenasher@Steptoe.com
                                                                      1114 Avenue of the Americas
                                                                      New York, N.Y. 10036
                                                                      Phone: (212) 506-3900
                                                                      Fax: (212) 506-3950

                                                                      *Counsel for The Hartford Financial Services Group, Inc.; Hartford Fire Insurance Company; Sentinel Insurance Company, Ltd.; Hartford Casualty Insurance Company; Hartford Underwriters Insurance Company; Twin City Fire Insurance Company; Trumbull Insurance Company; Property & Casualty Insurance Company of Hartford; Pacific Insurance Company, Ltd.; New England Insurance Company; New England Reinsurance Corporation; Hartford Insurance Company of Illinois; Hartford Accident & Indemnity Company; Hartford Insurance Company of the Midwest; Hartford Insurance Company of the Southeast; and Hartford Lloyd's Insurance Company*

20