**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: HARTFORD COVID-19 BUSINESS INTERRUPTION PROTECTION INSUARNCE LITIGATION | MDL No.  2963 |

## RESPONSE TO ORDER TO SHOW CAUSE

Plaintiffs in four separate cases, Red Apple Dental PC, Independence Barbershop, LLC, Back2Health Chiropractic Center, LLC, and Karmel Davis and Associates, Attorneys-At-Law, LLC[1] ("Respondents") pending against Hartford insurance entities,[2] hereby respond to the Order to Show Cause by recommending that the Panel consolidate all the pending lawsuits against Hartford and that the MDL be assigned to the Honorable Timothy J. Savage of the United States District Court for the Eastern District of Pennsylvania.

Judge Savage is an outstanding jurist whose capacity, experience, and current case assignments are a perfect fit for this litigation. Judge Savage is already assigned to *six* similar pending cases against Hartford, including four cases in which dispositive or class related motions have already been filed. Consolidation before Judge Savage will streamline both discovery and

---

[1] The four cases are captioned as follows: *Red Apple Dental PC v. The Hartford Fin. Servs. Gp., Inc., et al.*, 7:20-cv-03549 (S.D.N.Y); *Back2Health Chiropractic Center, LLC v. Sentinel Insurance Company, LTD.*, 2:20-cv-06717 (D.N.J.); *Karmel Davis and Associates, Attorney-At-Law, LLC v. The Hartford Financial Services Group, Inc. et al.*, 1:20-cv-02181 (N.D.GA); *Independence Barbershop, LLC, LLC v. Twin City Fire Insurance Co.*, 1:20-cv-00555 (W.D. TX).

[2] The Hartford related insurers include Hartford Financial Services Group, Inc.; Hartford Fire Insurance Company; Hartford Casualty Insurance Company; Hartford Underwriters Insurance Company; Sentinel Insurance Company Limited; and Twin City Fire Insurance Company. *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. MDL 2942, 2020 WL 4670700, at *3 n.8 (J.P.M.L. 2020). Hereinafter, unless noted otherwise, Respondents will refer to these insurers together as the "Hartford".

motions practice, and avoid conflicting resolutions of identical procedural and legal issues, including class certification.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1407, "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." Consolidation of actions involving common questions makes sense when numerous judges will be asked to address similar pretrial matters and resolve similar pretrial motions involving similar fact patterns. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006). The central and overriding goals of 28 U.S.C. § 1407 are to conserve judicial resources, promote efficient management of litigation, and avoid inconsistent pretrial rulings. *See also In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (Transfer is appropriate to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary."). Notably, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

## II.    ARGUMENT

### A.    Consolidation of All Covid-19 Business Interruption and Civil Authority Closure Claims Against Hartford Is Warranted

Consolidation of the Business Interruption insurance cases filed against Hartford

connected to COVID-19 and the related stay-at-home orders is appropriate because of the sheer volume of similar cases across the country implicating common issues. Based on all available evidence, Hartford consistently utilizes a small subset of template policy forms across all its insurance policies implicated by these cases. Moreover, Hartford has uniformly denied COVID-19 Business Interruption related insurance claims for identical reasons: arguing that there is no physical loss of or damage to property, that Civil Authority coverage is not implicated, that the stay-at-home orders are not a covered cause of loss, and (where applicable) that such claims a barred by a purported virus exclusion.

While Hartford will likely argue that these are purely legal issues devoid of any factual analysis, this is wrong. Whether an insurance policy provides coverage cannot be separated from the factual predicate that gives rise to coverage in the first place. Here, the related actions all share the same or similar triggering events: the losses of business income occasioned by COVID-19 and/or related stay-at-home orders. A Court will need to consider underlying common factual questions including, for example, whether COVID-19 was (likely) present or an imminent threat to insured property; the nature of the stay-at-home orders; and the content of regulatory filings (which could implicate regulatory estoppel). These factual issues, which are uniformly shared by the related actions, all support consolidation.

The global COVID-19 pandemic has affected every state in the country. As of August 25, 2020, there have been 5,715,567 total reported cases from all 50 states and a total of 176,617 deaths,[3] with reported cases rising by the day. News outlets have recounted that at one point, ninety-four percent of our nation's population, or about 308 million people, were subject to

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited August 25, 2020).

3

similar stay-at-home orders.[4] The impact of COVID-19 and the stay-at-home orders have also had a devastating financial impact nationwide, forcing businesses to suffer serious loss of income and damage to their property. COVID-19 and the stay-at-home orders have led thousands of businesses to file insurance claims for Business Interruption coverage pursuant to their commercial general property insurance policies based on the Business Income, and related Civil Authority provisions.  In response, Hartford actively and uniformly denied all COVID-19 related Business Interruption and Civil Authority insurance claims. Because of this policy of wrongfully denying all Business Interruption and Civil Authority related to COVID-19 well **over one hundred** insurance cases have been filed in federal court against Hartford alone, all centered on the same off-the-shelf insurance contracts and similar purported reasons for denying insurance coverage.

       1.       <u>The Cases Against Hartford Implicate Standard Form Policies and Standard Purported Reasons for Denying Coverage</u>

Based on all available evidence, ***Hartford utilizes a small set of standard forms with similar language*** relating to basic coverage issues, business interruption coverage, and civil authority coverage. ***In fact, many of the COVID-19 business interruption cases filed against The Hartford (including the four by Respondents) involve the same "Special Property Coverage Form" "Form SS 00 07 07 05"***. This Form has a coverage section that provides that Hartford "will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss." A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS" except those that are expressly and specifically listed

---

[4] *See* https://www.businessinsider.com/us-map-stay-at-home-orders-lockdowns-2020-3 (last visited August 26, 2020).

in the Limitations or Exclusions sections of the policy. This Form also uniformly provides

business income, and civil authority coverages:



See, e.g., *Red Apple Dental PC v. Hartford Financial Services Group Inc.*, No. 7:20-cv-03549

(S.D.N.Y. May 6, 2020); *Family Smiles LLC v. Sentinel Insurance Co.*, No. 1:20-cv-04838 (N.D.

Ill. Aug. 18, 2020); *La Issy Inc. v. Hartford Casualty Insurance Co.*, No. 8:20-cv-01878 (M.D.

Fla. Aug. 11, 2020); *TAQ Willow Grove LLC v. Twin City Insurance Co.*, No. 2:20-cv-03863

(E.D. Pa. Aug. 7, 2020); *Protégé Restaurant Partners LLC v. Sentinel Insurance Co.*, No. 5:20-

cv-03674 (N.D. Cal. June 2, 2020); *Back2Health Chiropractic Center LLC v. Hartford Financial*

*Services Group Inc.,* No. 2:20-cv-06717 (D.N.J. June 1, 2020); *Gonzalez v. Hartford Financial*

*Services Group Inc.*, No. 1:20-cv-22151 (S.D. Fla. May 22, 2020); *One40 Beauty Lounge LLC v.*

*Sentinel Insurance Co. Ltd.*, No. 3:20-cv-00643 (D. Conn. May 8, 2020); *Addiego Orthodontics*

*LLC v. Hartford Financial Services Group Inc.,* No. 3:20-cv-05882 (D.N.J. May 14, 2020);

*Risinger Holdings LLC v. Sentinel Insurance Co.,* No. 1:20-cv-00176 (E.D. Tex. Apr. 24, 2020);

*Grailey's Inc. v. Hartford Fire Insurance Co.,* No. 3:20-cv- 01181 (N.D. Tex. May 8, 2020);

*Milton v. Hartford Casualty Insurance Co.*, No. 3:20-cv-00640 (D. Conn. May 8, 2020);

*Independence Barbershop LLC v. Hartford Financial Services Group Inc.*, No. 1:20-cv-00555

(W.D. Tex. May 22, 2020); *Hearing Solutions II LLC v. Hartford Underwriters Insurance Co.*,

No. 2:20-cv-02401 (E.D. Pa. May 21, 2020); *Pure Fitness LLC v. Hartford Financial Services*

*Group Inc.*, No. 2:20-cv-00775 (N.D. Ala. June 3, 2020); *Forfex LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-01068 (D. Ariz. June 1, 2020). The list of filed cases utilizing this exact form goes on.

Moreover, Hartford frequently also attaches an off-the-shelf "Limited Fungi, Bacteria or Virus Coverage" "Form SS 40 93 07 05" to its policies, which purports to exclude coverage for COVID-19 business interruption claims (it does not). *See e.g.*, *Family Smiles LLC v. Sentinel Insurance Co.*, No. 1:20-cv-04838 (N.D. Ill. Aug. 18, 2020); *La Issy Inc. v. Hartford Casualty Insurance Co.*, No. 8:20-cv-01878 (M.D. Fla. Aug. 11, 2020); *TAQ Willow Grove LLC v. Twin City Insurance Co.*, No. 2:20-cv-03863 (E.D. Pa. Aug. 7, 2020); *Milton v. Hartford Casualty Insurance Co.*, No. 3:20-cv-00640 (D. Conn. May 8, 2020); *Independence Barbershop LLC v. Hartford Financial Services Group Inc.*, No. 1:20-cv-00555 (W.D. Tex. May 22, 2020); *Hearing Solutions II LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02401 (E.D. Pa. May 21, 2020); *Pure Fitness LLC v. Hartford Financial Services Group Inc.*, No. 2:20-cv-00775 (N.D. Ala. June 3, 2020); *Forfex LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-01068 (D. Ariz. June 1, 2020). The issues raised by this form are common.

In short, there is nothing unique or individualized about the coverage language in these standardized forms utilized by Hartford. And to the extent there are any variations – each subset of standardized forms will be able to be placed in limited finite groups.

Also, like its policies, the reason Hartford propagates for denying COVID-19 related Business Interruption insurance claims is also not unique and boils down to either COVID-19 and the stay-at-home orders not constituting "physical loss of or physical damage to property" or a covered cause of loss, and where included in the policy, a purported virus exclusion. As indicated in a sampling of Hartford's denial letters from across the country:

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this business income loss is not covered. Even if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss.

*Independence Barbershop LLC v. Hartford Financial Services Group Inc.,* No. 1:20-cv-00555

(W.D. Tex. May 22, 2020).

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this business income loss is not covered. Even if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss.

*Kole v. Hartford Financial Services Group Inc.*, No. 2:20-cv-03486 (E.D. Pa. July 15, 2020);

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered.

*Baked Daily Corp. v. Hartford Financial Services Group Inc.*, No. 1:20-cv-11385 (D. Mass. July

23, 2020)

One thing is clear: Hartford is applying ***blanket denials*** of business interruption and civil

authority closure claims ***for similar reasons***. There are clearly a core set of factual issues

implicated regarding whether insureds have suffered a covered loss as a result of physical

damage of or physical loss to property, including: a) questions about the nature of the COVID-19

Pandemic; b) questions about the nature of the COVID-19 virus itself; and c) questions about the

import of the stay-at-home civil authority orders. These factual and legal questions will play a

central and overlapping role across the Hartford Business Insurance litigation.

      **2.**     **The Sheer Volume of Cases and Overlapping Issues Being Raised In These Cases Argue For Consolidation**

The incredible number of cases against Hartford (all sharing common related issues)

supports consolidation, and that number is likely to significantly increase. Currently, there have

been approximately ***121*** cases filed in approximately ***35*** different federal districts across the

country against Hartford related to COVID-19 and/or the stay-at-home orders (located by the

7

Respondents). *See* Exhibit A. And this is likely not the end of the story. Hartford is one of largest property and casualty insurance companies in the United States, insuring over one million small businesses.[5] By way of example, since June 5th alone, the amount of cases filed in federal court against Hartford has more than doubled from 55 to the current approximately 121. *See* Exhibit A. This deluge is likely to continue to increase.

Moreover, apart from the sheer volume of all cases filed against Hartford, of the *121* cases filed against Hartford approximately ***48*** have been pled as class actions. *Id.* These 48 class actions have been assigned to over ***40*** separate federal judges. *Id.* The presence of overlapping class actions is a "dominating" factor weighing towards centralization. *See* David F. Herr, Multidistrict Litigation Manual § 5:24 (Updated 2020). There is no telling absent consolidation how many of the class actions will be certified, the contours of those classes, and how many will be denied.

Hartford's case-specific filings illustrate how it is already treating the filed cases in a uniform manner. Hartford has filed significant motions in approximately ***30 cases***. *See* Exhibit A. These motions regularly come in two shapes. First, in cases filed as putative nationwide or multistate class actions, Hartford has routinely filed motions seeking to strike nationwide class allegations based on misguided standing and personal jurisdiction arguments. *See, e.g., Hair Studio 1208 LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02171 (E.D. Pa. May 5, 2020); *Back2Health Chiropractic Center LLC v. Hartford Financial Services Group Inc.*, No. 2:20-cv-06717 (D.N.J. June 1, 2020); *Protégé Restaurant Partners LLC v. Sentinel Insurance Co.*, No. 5:20-cv-03674 (N.D. Cal. June 2, 2020). There is no compelling reason why these

---

[5] *See, e.g.,* https://naic.org/prod_serv/MSR-PB-19.pdf; https://s0.hfdstatic.com/sites/the_hartford/files/facts-about-the-hartford.pdf (last visited August 26, 2020).

arguments based on (federal) standing and personal jurisdiction should not be uniformly decided instead of haphazardly determined across the various class actions.

Second, consistent with its misguided reasons for denying claims in the first place, Hartford has filed dispositive motions seeking dismissal of claims based on: a) its purported virus exclusions (when present); b) arguments that business income losses from COVID-19 and/or stay-at-home orders do not constitute physical loss or damage to property; and c) arguments that the stay-at-home orders are not a covered causes of loss triggering Civil Authority coverages. *See e.g., Lansdale 329 Prop LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02034 (E.D. Pa. Apr. 27, 2020); *Eye Care Center of New Jersey PA v. Hartford Financial Services Group*, No. 2:20-cv-05743 (D.N.J. May 8, 2020); *Moody v. Hartford Financial Services Group Inc.*, No. 2:20-cv-02856 (E.D. Pa. June 16, 2020). There is no compelling reason why these same arguments relating to the same language should result in different findings from different courts spread across different states. Placing all cases in front of one court will avoid duplication of judicial efforts and inconsistent results.

At bottom, absent consolidation, Courts will inevitably set varying case management schedules and deadlines that may conflict with one another, involve overlapping discovery issues, and reach inconsistent results (including on class certification) in these cases against Hartford. Consolidation is called for to avoid this. *See In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968)) (noting that the alternative to appropriate transfer is '"multiplied delay, confusion, conflict, inordinate expense and inefficiency."); *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 623 F. Supp. 634, 635 (J.P.M.L. 1985) ("Transfer under Section 1407 is desirable in order to avoid duplicative discovery, prevent inconsistent pretrial rulings,

and conserve the resources of the parties, their counsel and the judiciary."); *In re: Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("[C]entralization will promote efficient conduct of the litigation by preventing duplicative discovery into Portfolio's policies and practices as to its calling procedures.").

### 3.   The Few Remaining Factual Differences That Hartford Will Point to Do Not Provide Adequate Grounds Not to Consolidate

Hartford will undoubtedly claim that all issues will not be precisely analogous throughout *all* cases against it. For example, Hartford may try arguing that it occasionally uses different off-the-shelf policies, and that state law variations may exist. As an initial matter both arguments are overblown. While Hartford might in some minority of cases use different off-the-shelf policies, they are still substantially similar. *See also* MDL 2942, ECF No. 544-1 (June 15, 2020), Declaration of Professor Tom Baker (identifying two standard form policies used by Hartford and explaining why companies like Hartford use off the shelf products); *id.*, ECF No. 758-9 (July 24, 2020) (identifying the uniform nature of purported virus exclusion). Indeed, most virus exclusions were added to policies after a concerted effort by the insurance industry following the SARS outbreak in the early 2000's to utilize uniform language developed by the Insurance Services Office ("ISO").[6]

And while state law might not be completely the same across the United States, the variations would likely not be determinative here. The best indication that Hartford itself believes as much (at least when convenient) is the great weight it places on an early (limited) decision  from Michigan -- *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham County, July 1, 2020) -- which it repeatedly cites to regardless of

---

[6] ISO Circular New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria (July 6 ,2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf

the jurisdictional law that is applicable. *See, e.g., Karmel Davis and Associates, Attorney-At-Law, LLC v. The Hartford Financial Services Group, Inc. et aI.,* 1:20-cv-02181, ECF No. 39-1 (N.D.GA); *Independence Barbershop, LLC, LLC v. Twin City Fire Insurance Co.,* 1:20-cv-00555, ECF No. 26 (W.D. TX); *Hais Hais and Goldberger PC v. Sentinel Insurance Co. Ltd.*, No. 4:20-cv-00919, ECF No. 17 (E.D. Mo.).

Hartford will also likely argue that the number of civil authority orders issued throughout the country weighs against transfer. However, again, this is overblown. These orders are highly similar, with closing of all non-essential businesses based on specific categories of businesses and limiting bars and restaurants to take-out or delivery services. It is fair to say that similarities among the civil authority orders far outweigh any differences.[7]

But, even more to the point, there is no requirement that the claims, parties, and facts all be identical for centralization to be appropriate. *See In re: Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376–77 (J.P.M.L. 2011) ("As we have stated previously, centralization under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."); *In re: Bank of New York Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372–73 (J.P.M.L. 2012) (Centralization is appropriate even in the face of incomplete identity of legal theories and parties); *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 939 F. Supp. 2d 1376, 1377 (J.P.M.L 2013). Indeed, as related to state law variations, the Panel has previously found that "[A]lthough various actions may raise legal issues regarding application of the law of different states, this is an insufficient ground for denying transfer of this litigation under Section 1407

---

[7] https://www.forbes.com/sites/suzannerowankelleher/2020/03/28/23-states-shut-down-and-counting-state-by-state-travel-restrictions/#70ac80e158f4 (last visited August 26, 2020).

since such issues can be presented to and resolved by the transferee judge." *In re Helicopter Crash in Germany on Sept. 26, 1975*, 443 F. Supp. 447, 449 (J.P.M.L. 1978)

Here, the facts and circumstances on the whole are overwhelmingly common, and minor variations in form policy language or civil authority orders should not prevent consolidation of the related cases at this early stage of litigation in an effort to promote judicial economy and ensure consistent decisions.

In any event, the transferee judge can "formulate a pretrial program that . . . allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 543 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008). *See also In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L 2017) ("Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization.... In our opinion, centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions.").

In short, all cases against Hartford share at a number of core questions implicating mixed legal and factual issues including: (a) does COVID-19 or the COVID-19 pandemic trigger coverage under Hartford's business interruption insurance policies; (b) do governmental closure orders related to COVID-19 trigger coverage under Hartford's business interruption insurance policies; and (c) do any exclusions claimed by Hartford, including those related to viruses or pandemics, apply. These central questions are critical to the survival of the businesses insured by Hartford and should not risk having multiple courts across the country reach divergent and

conflicting results about the same insurance policies sold by Hartford and whether class certification is appropriate.

>B.  **The Eastern District of Pennsylvania Is the Ideal Transferee Venue**

The Honorable Timothy J. Savage of the Eastern District of Pennsylvania is the appropriate judge to preside over the pretrial proceedings for all of the COVID-19 business interruption claims against Hartford, based on his experience managing complex insurance litigation, ***including cases involving Hartford***, and the historical efficiency of the E.D. Pa. docket. Judge Savage is already presiding over approximately ***six*** pending COVID-19 business interruption claims challenging Hartford's denial of business interruption and civil authority closure insurance claims,[8] which appears to be more than any other judge in any jurisdiction throughout the United States. *See* Exhibit A. And two of these cases are filed as class actions. Moreover, dispositive motions (or motions seeking to nationwide class allegations) have been filed in four of these pending cases. *Id.*

In determining an appropriate transferee forum, the Panel typically considers (i) the location of primary witnesses and documentary evidence, (ii) the relative accessibility of the district for nationwide litigation, and (iii) the experience of the transferee judge. *See In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L 2013). The Panel also considers the caseload conditions of the transferee court. *See, e.g.*, *In re CTP Innovations, LLC, Patent*

---

[8] *Hair Studio 1208 LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02171 (E.D. Pa. May 5, 2020); *Sidkoff Pincus & Green PC v. Sentinel Insurance Co.*, No. 2:20-cv-02083 (E.D. Pa. Apr. 30, 2020); *Lansdale 329 Prop LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02034 (E.D. Pa. Apr. 27, 2020); *Moody v. Hartford Financial Services Group Inc.*, No. 2:20-cv-02856 (E.D. Pa. June 16, 2020); *Bokman v. Sentinel Insurance Co. Ltd.*, No. 2:20-cv-02887 (E.D. Pa. June 17, 2020); *Kole v. Hartford Financial Services Group Inc.*, No. 2:20-cv-03486 (E.D. Pa. July 15, 2020).

*Litig.*, 65 F. Supp. 3d 1410, 1411 (J.P.M.L 2014) (noting that the transferee court "enjoys favorable caseload conditions").

Based on the above considerations, the Eastern District of Pennsylvania is the most appropriate venue for resolution of all COVID-19 cases against Hartford. Because COVID-19 has a nationwide impact, and cases against Hartford have been filed throughout the United States, no one judicial forum can claim an overridingly strong connection to the present case over another. *See In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356 (J.P.M.L. 2011) ("The allegations in this nationwide litigation do not have a strong connection to any particular district, and related actions are pending in numerous districts across the country."); *In re: Dial Complete Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1380, 1381 (J.P.M.L 2011) (transferring the consolidated actions to the District of New Hampshire because "[t]he allegations in this nationwide litigation do not have a strong connection to any particular district, and related actions are pending in many districts."). In the absence of a strong connection to the nature of the litigation, this Panel should assign the case to a district and a judge who have not only demonstrated the capability of successfully managing complex litigation, but the sufficient time to devote to the litigation, and already has a demonstrated interest in the efficient management of this litigation.

The Eastern District of Pennsylvania has proven itself to be capable of presiding over the nation's most complex multidistrict litigation cases. For example, this Panel consolidated and transferred cases concerning NFL concussion injuries to the Eastern District of Pennsylvania, *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L 2012), as well as cases involving birth defects resulting from the depression drug Zoloft, *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L  2012).

This Panel's trust in the Eastern District of Pennsylvania to wisely shepherd complex litigation has a long history. *See, e.g.*, *In re Plumbing Fixtures*, 295 F.Supp. 33 (J.P.M.L 1968). Despite handling the nation's most complex cases, the Eastern District of Pennsylvania has a median resolution time from filing to disposition of 5.8 months 18.4 months from filing to trial[9] which compares favorably with the Northern District of Illinois, the District of New Jersey, and the District of Connecticut all alternative potential proposed transferee districts.[10]

Lastly, Philadelphia, where the Eastern District of Pennsylvania sits, is the fifth largest city in the country, and is a well-known hub for air travel, and is easily accessible. Moreover, Philadelphia can also be accessed from Connecticut (the location of Hartford) via train, or car, an important factor considering the impact of COVID-19 on air travel.

Accordingly, the Eastern District of Pennsylvania is an attractive and appropriate venue to serve as a transferee court for the Hartford litigation.

In terms of an appropriate transferee judge, the Honorable Timothy J. Savage is a widely respected jurist that has the right combination of experience, capability, and availability to handle this litigation. Judge Savage has the requisite prior experience with complex insurance litigation necessary to understand the issues involved. *See, e.g.*, *Willisch v. Nationwide Ins. Co. of Am.*, 2015 WL 12831297, at *1 (E.D. Pa. Sept. 10, 2015); *Vito v. RSUI Indem. Co.*, 2020 WL 424592 (E.D. Pa. Jan. 27, 2020); *Waterman v. USAA Cas. Ins. Co.*, 2013 WL 12145867, at *1 (E.D. Pa. Apr. 18, 2013); *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F.Supp.2d 339, 346 (E.D. Pa. Mar. 16, 2011).

---

[9] United States District Court – Judicial Caseload Profile, at 16, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf, at 16, (last visited August 26, 2020).

[10] *See id.*

A bipartisan appointment by President George W. Bush in 2002, Judge Savage has successfully overseen prior MDLs assigned by this panel, *see In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L 2005); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1346 (J.P.M.L. 2006), and is not currently overseeing an MDL. This case deserves to have a judge who can devote significant time and resources to its management and Judge Savage is qualified to do so. Judge Savage has the necessary experience, capability, and availability to manage this complex case.

## III.   <u>CONCLUSION</u>

Based upon the foregoing reasons the many actions against Hartford should be consolidated in front of Judge Savage. They will involve insurance policies utilizing the same language, endorsements, and exclusions. They will share common discovery and pretrial motion practice. And centralization of actions against Hartford will also eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims.

Date: August 26, 2020.

Respectfully submitted,

*/s/ Shanon J. Carson*
Shanon J. Carson
Y. Michael Twersky
scarson@bm.net
mitwersky@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-4656

Hans W. Lodge
hlodge@bm.net
**BERGER MONTAGUE PC**
43 SE Main St, Suite 505
Minneapolis, MN 55414
Tel: 612-607-7794

Daniel K. Bryson

16

Patrick M. Wallace
dan@wbmllp.com
pat@wbmllp.com
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035

Gregory F. Coleman
Will Ladnier
Jonathan B. Cohen
greg@gregcolemanlaw.com
will@gregcolemanlaw.com
jonathan@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049

Alex R. Straus
alex@gregcolemanlaw.com
**GREG COLEMAN LAW**
16748 McCormick Street
Los Angeles, CA 91436
Tel: 917-471-1894

*Attorneys for Back2Health*
*Chiropractic Center, LLC; Karmel*
*Davis and Assoc., Atty-at-Law, LLC;*
*Independence Barbershop, LLC; and*
*Red Apple Dental PC*