BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: HARTFORD COVID-19 ) | |
| BUSINESS INTERRUPTION ) | MDL DOCKET NO. 2963 |
| PROTECTION INSURANCE ) | |
| LITIGATION ) | |

**PLAINTIFF FOUNDER INSTITUTE INCORPORATED'S RESPONSE TO PANEL'S ORDER TO SHOW CAUSE IN OPPOSITION OF MULTIDISTRICT LITIGATION (MDL)**

Plaintiff Founder Institute Incorporated ("Founder"), by and through their undersigned counsel, pursuant to 28 U.S.C. § 1407 and Rule 8.1(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), hereby submits this response to the Panel's Order to Show Cause (Dkt No. 2) why the litigation against The Hartford Financial Services Group, Inc., ("The Hartford") and its subsidiaries relating to COVID-19 pandemic should not be transferred to a multidistrict litigation (MDL).

## I.  INTRODUCTION

The Panel has previously denied the motion to transfer in its Order Denying Transfer and Directing Issuance of Show Cause Orders (Dkt. # 1) (the "Order Denying Transfer"), and further declined to create an industry-wide MDL.

Plaintiff Founder, just like thousands of other businesses in Santa Clara County, California, was forced to close its office due to the State of California and Santa Clara County Emergency Public Health Orders due to the global COVID-19 pandemic, and now seeks coverage of the resulting losses under its business insurance policy. That said, there are several key factual distinctions that set Founder's case apart from those of many other Hartford plaintiffs such that centralization would not "further the just

and efficient conduct of this litigation," just as the Panel concluded recently in the *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL 2942, 2020 WL 4670700, at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 12, 2020).

First, the policies of Hartford plaintiffs have differences regarding Hartford's main defense in these cases, namely the so-called "Virus Exclusion" clause. Specifically, some policies have the so-called Virus Exclusion clause, while other Hartford policies do not have an explicit Virus Exclusion. This alone creates a branching path between the Plaintiffs who have Virus Exclusion policies and the ones that do not, and the course of the litigation of one group will be significantly different compared to the other.

Second, there are considerable differences and variations of when and how the State and County Public Health Emergency Orders were enacted, such that there is no uniform common question of fact across the cases.

Third, some cases, including Founder's, were brought against the Hartford parent company, and therefore have factual and jurisdictional issues not present in comparison to cases where that entity is not a party to the suit.

## II. ARGUMENT
### A. Factual Differences Across the Hartford COVID-19 Litigation Cases Argues Against Centralization.

#### 1. Not All Policies Have Virus-Exclusion; And Those That Do May Not Be Applicable Given The Transmission Of The Virus By Respiratory Droplets.

Not all of the policies that are at issue in these Hartford Cases contain a Virus Exclusion, and those that do are not identical to one another.

Plaintiffs in the *Levy/Taube* cases (MDL No. 2963, Dkt. No. 140) raised in their brief that Hartford pointed out in MDL No. 2942 that some policies have no Virus Exclusions and that others, have state-specific provisions removing the Virus Exclusion.

(Dkt. No. 140 at p.4). In those cases, there will be no factual or legal issues regarding whether Hartford should be estopped from relying on it. *Id.*

The Founder's Virus Exclusion is as follows:

### i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

(*Founder Institute Incorporated v. Hartford Fire Insurance Company, et al.*, Case No. 3:20-cv-04466-VC, Dkt. No. 24, Ex. A at p.124)

Founder's policy is identical to the *Levy/Taube* Virus-Exclusion language (See Dkt. 140), and as the plaintiffs in the *Levy/Taube* cases pointed out in their brief, at least one version of the Hartford Virus Exclusion exists in the *SA Hospitality Group, LLC. et al. v. Hartford Financial Services Groups, Inc. et al.*, Case No. 1:20-cv-03258 (S.D.N.Y):

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Levy/Taube* Response, MDL No. 2963, Dkt 140 at p.5)

Independent of the differences and variations of the Virus Exclusion clause, Founder's Policy was issued by Hartford in California, so California law will control the interpretation of the Virus Exclusion clause, introducing yet another layer of differences that would argue against centralization of these cases.

As such, the factual differences outlined above mean that these Hartford COVID-19 cases fail to meet the requirement of 28 U.S.C. § 1407(a), and therefore the Panel should deny centralization of these cases.

**2.    The Hartford COVID-19 Cases Have Different Factual Circumstances Relating To the Nature Of The Government Order.**

It is undisputed that COVID-19 is an unprecedented global pandemic that practically shut down main metropolitan areas. However, the spread and response to COVID-19 in the United States is not uniform at all. Rather, some states were hit with the pandemic earlier and were forced to employ drastic emergency measures very early on, while other states had a few more weeks before they started seeing identified cases and had to issue public emergency health orders.

Specifically, Santa Clara County issued one of the earliest and most stringent California County pandemic ordinances when it ordered shutting down the County due to COVID-19 by March 16, 2020, even before the California State-level order was enacted on March 19, 2020. California was the first state that issued a Stay-At-Home order on March 19, 2020, while South Carolina was the last state that issued the Stay-At-Home order on April 7th, 2020.[1]

Furthermore, the factual differences are even more pronounced when considering the types of businesses in each case. For example, Plaintiffs who are deemed essential businesses such as healthcare, food service, and others, have to stay open at a reduced capacity and require additional safeguards that are costly in order to operate at a significant loss. Nonessential businesses, like Plaintiff Founder, have to completely shut down and where possible, have their employees work from home.

---

[1] KFF.org: When State Stay-At-Home Orders Due To Coronavirus Went into Effect. Published April 09, 2020. https://www.kff.org/other/slide/when-state-stay-at-home-orders-due-to-coronavirus-went-into-effect/ (Accessed August 31st, 2020)

### B. Some Cases, Including *Founder*, Name The Hartford As Defendant.

Some Plaintiffs, including Founder, have named The Hartford, the parent of the Hartford family of insurance and finance companies, as a defendant.

The Hartford moved to dismiss Plaintiff's Complaint, similar to the Plaintiffs in *Levy* and *Taube* (MDL No. 2963, Docket No. 140, P. 7) on the ground that it is a mere holding company and never entered into a contract with Plaintiffs. Just like the Plaintiffs in *Levy* and *Taube* pointed out in their brief, this presents a triable question of fact that will have to be decided at the earliest, on summary judgment, as the court held in *Smith v. Sentinel Co., Ltd.*, 2010 WL 5174377, at *1 (N.D. Okla. Dec. 15, 2010) (using the company's acronym, HFSG):

> The contract is replete with references to both "The Hartford" and to "Sentinel Insurance Company's" ("Sentinel") role in the contract. (See Dkt. # 2–1, p.6–38). The complaint thus states a plausible claim that HFSG is a proper party defendant in this case. HFSG's arguments that "The Hartford" is merely a trade name, and that HFSG did not have sufficient involvement in the insurance claim to either be in privity or a special relationship are arguments better addressed on summary judgment. Therefore, the Motion to Dismiss (Dkt. # 16) is denied.

This is a separate issue that needs to be litigated separately from cases where The Hartford does not appear as a defendant. As such, once again, these cases do not meet the requirements set forth by 28 U.S.C. § 1407(a).

### C. Denial of Centralization is Proper Here When There Are No Common Questions Of Fact Required By 28 U.S.C. § 1407(a).

As shown above, there are fundamental factual distinctions among these cases that mean that there are no significant "common questions of fact," as required by 28 U.S.C. § 1407(a). Indeed, the only common facts regarding whether the plaintiffs' losses

are covered by the policies are that there was a worldwide COVID-19. The existence of the pandemic is undisputed.

On the other hand, the interpretation of the Hartford Policies at issue, must be analyzed under the respective laws of the State where the policies are active, and whether The Hartford and its children companies acted in bad faith in blanket denial of coverages in various states requires separate analysis and discovery. It would be contrary to the spirit and intent of 28 U.S.C. 1407(a). Analysis of the various distinct issues and particular discovery issues would make the process neither far nor efficient.

### D. In the Alternative, If There Is Centralization, The MDL Should Be Centralized in the Northern District of California.

In the alternative, should the Panel decide to centralize these cases, Plaintiff Founder Institute suggests the Northern District of California (the "CAND") as the appropriate transferee district. After all, these are nationwide cases, and the Northern District of California is unique in that it has a high concentration of large, multi-national entities regularly litigating matters involving numerous parties. As such, CAND has the expertise and resources to conduct MDL litigation. Indeed, the Panel has previously chosen Northern District of California in the Roundup Products Liability Litigation because it has recognized CAND being both convenient and accessible for all the parties, and the Panel further recognized CAND as one of the few districts that has both the necessary judicial resources and expertise. See *In Re: Roundup Products Liability Litigation*, MDL No. 2741, Transfer Order, Dkt. 1.

### III. CONCLUSION

For all the foregoing reasons, and the reasons set forth by other Plaintiffs and Interested Parties who oppose the MDL, Founder respectfully requests that the Panel

not transfer these cases into an MDL. In the alternative, if the Panel decides to centralize these actions, Founder respectfully requests that the actions be centralized in the Northern District of California.

Dated: August 31, 2020	Respectfully submitted,

/s/ Michael B. Indrajana
INDRAJANA LAW GROUP, APLC
Michael B. Indrajana
michael@indrajana.com
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 597-0928

BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: HARTFORD COVID-19 ) | |
| BUSINESS INTERRUPTION ) | MDL DOCKET NO. 2963 |
| PROTECTION INSURANCE ) | |
| LITIGATION ) | |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that I electronically filed the foregoing Notice of Appearance with the Clerk of the Panel using the ECF system, and all counsel of record will receive service via the ECF system.

Dated: August 31, 2020          **INDRAJANA LAW GROUP, A PLC**

/s/ *Michael B. Indrajana*
Michael B. Indrajana
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Telephone: (650) 597-0928
Email: michael@indrajana.com

*Attorney for Plaintiff Founder Institute Incorporated*