**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Hartford COVID-19 Business Interruption Protection Insurance Litigation | MDL No. 2963 |

**PLAINTIFFS' REPLY TO RESPONSES TO ORDER TO SHOW CAUSE**

Pursuant to 28 U.S.C. § 1407 and Panel Rule 8.1(d), Plaintiffs Forfex LLC, JDR Enterprises LLC, Patrick and Geoff Investments Inc., Roundin3RD Sports Bar, LLC, R3 Hospitality Group, LLC, Little Stars Corporation, Consulting Advantage Inc., Rencana LLC, The Irvine Company LLC, Cosmetic Laser, Inc., Dr. Jeffrey Milton DDS, Inc., One40 Beauty Lounge, LLC, Harvey B. Pats, M.D.P.A., Dotexamdr PLLC, Ambulatory Care Center, PA, Sharde Harvey DDS PLLC, Salvatore's Italian Gardens, Inc., Garden Place, Inc., The Delavan Hotel LLC, Sidkoff, Pincus & Green PC, Adrian Moody, Robin Jones, Seymon Bokman, Adorn Barber & Beauty LLC, ATCM Optical, Inc., Omega Optical, Inc., and Omega Optical at Comcast Center LLC d/b/a Omega Optical[1] ("Plaintiffs"), respectfully submit this consolidated reply to the responses to this Panel's August 12, 2020 Order to Show Cause, ECF No. 3, in support of the transfer of these actions pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.

**I.    SECTION 1407 CENTRALIZATION IS APPROPRIATE.**

Hartford's opposition to centralization and the creation of a Hartford-specific MDL does little more than mirror its opposition to the industry-wide MDL that was proposed in MDL No. 2942. *See, e.g.*, Hartford's Resp. in Opp. To Order to Show Cause Pursuant to 28 U.S.C. § 1407,

---

[1] While not included in the original Schedule A to the Order to Show Cause (ECF No. 3), Plaintiffs ATCM Optical, Inc., Omega Optical, Inc., and Omega Optical at Comcast Center LLC d/b/a Omega Optical are plaintiffs in pending actions that were marked as related in this MDL. *See* Notice of Related Action, ECF No. 181.

ECF No. 146 ("Hartford's Response").  Focusing on what it perceives as skepticism of an industry-wide MDL reflected at oral argument for MDL No. 2942, Hartford ignores the substance of the Panel's decision in MDL No. 2942 that led to the issuance of the Order to Show Cause being addressed here. *See* Order Denying Transfer, MDL No. 2942, ECF No. 772; *see also* Hartford's Resp., ECF No. 146, at 1-3.

In fact, in its Order Denying Transfer, the Panel found that that "the arguments for insurer-specific MDLs are more persuasive" than those for an industry-wide MDL and, referencing the potential of an insurer-specific MDL, noted:

> Such an MDL would be limited to a single insurer or group of related insurers and thus would not entail the managerial problems of an industry-wide MDL involving more than a hundred insurers. The actions are more likely to involve insurance policies utilizing the same language, endorsements, and exclusions. Thus, there is a significant possibility that the actions will share common discovery and pretrial motion practice. Moreover, centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face. An insurer-specific MDL therefore could achieve the convenience and efficiency benefits envisioned by Section 1407.

MDL No. 2942, ECF No. 772, at 3-4.  Believing, based upon the submissions in MDL No. 2942, that Hartford may very well be one of the defendants for whom an insurer-specific MDL was warranted, the Panel directed the Clerk of the Panel to issue an order to show cause as to why a Hartford-specific MDL should not be created. *Id*. at 4.  Indeed, the convenience and efficiencies contemplated by Section 1407 can be obtained in a Hartford-specific MDL.

Hartford's[2] rebuttal boils down to the basic themes that most defendant-insurers have echoed: there are only common questions of law, not fact; centralization will be neither efficient

---

[2] "Hartford" refers to: (1) the numerous Hartford-related entities referenced by the Panel: Hartford Financial Services Group, Inc.; Hartford Fire Insurance Company; Hartford Casualty Insurance Company; Hartford Underwriters Insurance Company; Sentinel Insurance Company Limited; and Twin City Fire Insurance Company, MDL 2942, ECF No. 772 at 4 n.8 (J.P.M.L. Aug. 12, 2020) ("Order Denying Transfer"); and (2) additional The Hartford Financial Services Group, Inc. direct or indirect subsidiaries identified by Hartford in its Response to the Order to Show Cause: Trumbull Insurance Company; Property & Casualty

nor convenient; and multiple class do not warrant centralization. *See* ECF No. 146. However, even Hartford concedes that there are 126 cases that are currently pending in federal courts in "at least 27 different states" and has identified approximately forty-four separate class actions.[3] *See* ECF No. 146, at 3, 14. And, Hartford has done little to address the overlapping factual, legal and class issues that permeate each of these cases that could benefit from centralization. As set forth below, these 126 cases do share many common questions of fact, common questions of law, and overlapping classes whose resolution would benefit greatly by centralization.

### A.  The Related Actions Share Many Common Questions of Fact.

As noted in Plaintiffs' Response to the Order to Show Cause, ECF No. 132, at 9-12, there are numerous factual issues that are common to the Related Actions including materially identical policy language, endorsements, and exclusions; materially identical government shutdown orders; and materially identical claims. Hartford's defenses are materially the same in most cases and rely upon issues such as whether COVID-19 causes "physical damage or loss to property," as that phase is used in the Hartford policies; and whether COVID-19 was present on the insured property or on property sufficiently connected by proximity or in other ways to the insured property such that coverage is triggered. *See, e.g.*, ECF No. 132, at 10; *see also* ECF Nos. 132-2, 132-3, 132-4, 132-5, 132-6 (table of contents of motions to dismiss or letter briefs filed by Hartford). Hartford tries

---

Insurance Company of Hartford; Pacific Insurance Company, Ltd.; New England Insurance Company; New England Reinsurance Corporation; Hartford Insurance Company of Illinois; Hartford Accident & Indemnity Company; Hartford Insurance Company of the Midwest; Hartford Insurance Company of the Southeast; and Hartford Lloyd's Insurance Company, which is managed by its attorney-in-fact, Hartford Lloyd's Corporation, an indirect subsidiary of The Hartford Financial Services Group, Inc., see ECF No. 146, at 1 n.1.

[3] Exhibit A to the Order to Show Cause lists sixty-eight cases but it appears that two cases - *Florida Wellness Center of Tallahassee v. Hartford Casualty Insurance Company*, Case No. 4:20-cv-00270 (N.D. Fla.) and *ATCM Optical, Inc. et al. v. Hartford Fire Insurance Company*, Case No. 2:20-cv-02828 (E.D. Pa.) - were subsequently dismissed. In addition, Notices of Related Actions were filed identifying approximately an additional seventy cases. *See* ECF Nos. 8, 12, 50, 104, 111, 118, 119, 126, 127, 138, 145, 181. The approximately 136 cases are referred to herein as the "Related Actions."

to minimize these differences by relying upon minor distinctions such as whether a given government shutdown order required complete closure or only impaired operations or by claiming that various policyholders may have different positions as to whether the virus was present at the property. See ECF No. 146, at 8-9. Hartford also misleadingly claims that no party has identified a single set of common discovery. *Id*. at 9. However, "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *See, e.g., In re Ins. Brokerage Antitrust Litig*., 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Furthermore, Hartford's position misses the point. The similarity in policy language, endorsements and exclusions is what will drive the common discovery. Indeed, the meaning of the terms in the policy will be subject to common discovery and the key witnesses will be similar, if not identical. In addition, as noted previously by Plaintiffs and highlighted by additional respondents, Hartford relies on standardized forms prepared by the Insurance Services Office, known as "ISO." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) (recognizing that "most primary insurers" in the United States use insurance forms from ISO, "an association of approximately 1,400 domestic property and casualty insurers" as the basis for their policies); *see also* ECF No. 132, at 14 (noting discovery is already ongoing in the Eastern District of Pennsylvania with respect to ISO); ECF No. 154, at 5-7 (explaining ISO and use of standardized forms); ECF No. 115 at 2-3 (discussing standardized ISO forms). Because of the uniformity in the policy language, even though the actions here involve different states or certain plaintiffs may have different exclusions, all of the claims arise from a common foundation in the form of ISO's policies and/or Hartford's standard modifications to those policies. The interpretation of the standardized forms and the discovery needed to decide those questions will be common across cases and centralization would promote uniformity in the answers to those questions.

In addition, Hartford skirts over the issue of whether the virus caused physical loss or damage to the property or whether the virus is present at the property. ECF No. 146, at 9. Unlike a typical insurance case, the cause of the damage here is a virus that cannot be seen or otherwise detected through normal means. Thus, the question of its presence cannot be resolved through testimony from typical fact witnesses such as the individual plaintiffs and discovery about their individual experiences. Rather, as Plaintiffs discussed in their Response, the presence of the virus will likely be established through epidemiological modeling, *see* ECF No. 132, at 11-12, which would be most efficiently and cost-effectively done in a coordinated fashion.

Likewise, the impact of the various government orders at issue should also be adjudicated in a coordinated proceeding. While not identical, these orders involve considerably less variation than their sheer number might imply. By far the most common order, for instance, was that Plaintiffs' businesses simply shut down. Although the plaintiffs may have been subject to stay-at-home orders in different states, the import and effect of these orders was identical – the policyholders were required to close their busines either fully, or in some cases, partially. To the extent the scope of the closures vary, it is a damages issue that does not preclude centralization. *See, e.g., In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381-82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims). And, even in those instances where shutdown orders have now been relaxed, the ways in which states have done so can be broken down into a limited number of

categories.[4]  The relatively limited number of variations between these orders is dwarfed by the number of inconsistent discovery and other pretrial rulings that will issue regarding these orders should these cases all proceed on separate tracks.

These issues with respect to the standardized policies, physical presence of the virus, and materially-identical government shutdown orders are factual and common to the related actions. These issues can, and should, be resolved in a common way in a centralized proceeding. In addition, these common questions of fact also heighten the likelihood that, at a minimum, certification of the classes proposed in many of these actions will require significant judicial resources to resolve.  This Panel has already recognized that "centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face."  MDL No. 2942, ECF No. 772, at 3-4.  Hartford's response to the Panel's recognition of the issues with respect to overlapping classes is two-pronged.

First, Hartford claims that the issue is "largely illusory" because many of the classes are just part of "an intentional strategy by plaintiffs' counsel" to, as Hartford sees it, forum shop and even beyond that issue, Hartford claims many of the classes are not uniform. *See* ECF No. 146, at 15-16. Putting aside Plaintiffs' objection to Hartford's characterization of the "strategy" of filing multiple class actions, even under Hartford's analysis, there are multiple "plaintiff's counsel" who filed multiple class actions, thereby still leaving the question of overlapping classes; and even when Hartford strips out the class actions it has determined are "duplicative actions," by its own admission, there are still thirty-four class actions pending against Hartford. *See id*. Beyond that

---

[4] *See, e.g.*, https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html (placing the pandemic response in each of the 50 states into four categories – reversing, pausing, reopening, and reopened – and noting the impact of the orders currently in place on seven categories of businesses).

issue, Hartford desperately tries to draw distinctions among the thirty-four class actions moving them into five categories of differences. *Id*. at 16. However, even if the classes as alleged are not identical, they are overlapping and can benefit from coordinated proceedings.

Second, Hartford argues that the classes will not be certified. *See id*. at 17-18 (arguing nationwide classes are disfavored and insurance coverage class actions are rare). Plaintiffs obviously take a different view, but respectfully submit that it is unnecessary for this Panel to prematurely assess Plaintiffs' arguments in favor of class certification. At this stage, the common evidence on which Plaintiffs anticipate they will rely, combined with the consistency of the arguments with which Hartford has so far defended these actions, certainly makes it possible that, following discovery, there will be substantial class certification questions. The fact that Hartford believes there are distinctions among the overlapping classes even further supports centralization so that these claims can be organized and interim class counsel appointed to ensure clear representation of the affected insureds.

> **B. Resolution of the Related Actions' Common Questions of Law Also Illustrate Why Centralization Will Promote Efficiency and Convenience.**

In addition to the common questions of fact that these related actions share, the common questions of law that these related actions indisputably share also support centralization. Hartford relies heavily on the concept that common questions of law are not justification for centralization. *See, e.g*., ECF No. 146, at 1-2. However, while this Panel has held that common questions of law are not by themselves sufficient to warrant transfer absent common questions of fact, this does not mean that common legal questions are irrelevant to the analysis.

When Section 1407's requirement that there be "one or more common questions of fact" is satisfied, the presence of one or more common questions of law means that centralization would even further "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407; *see, e.g.*,

*In re Vision Serv. Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (centralizing actions because they "involve identical legal questions" and to "prevent inconsistent pretrial rulings"). As this Panel has already noted, an MDL specific to Hartford is "more likely to involve insurance policies utilizing the same language, endorsements, and exclusions," MDL No. 2942, ECF No. 772, at 3-4, which would present common issues of policy interpretation. While Hartford argues in the abstract that its policy forms vary among insureds, it is obvious that in its defense of these actions thus far, it has consistently raised the same arguments. *See, e.g*., ECF Nos. 132-2, 132-3, 132-4, 132-5, 132-6. Indeed, despite being in the best position of any party to know its own policy forms, Hartford fails to identify any meaningful differences in its policy forms that it believes would lead to a materially different interpretation.

Thus, there are considerable efficiencies to centralizing these actions, and the pending motions to dismiss, before the same transferee judge. As the Second Circuit noted in *In re Ivy*, 901 F.2d 7 (2d Cir. 1990), when faced with a legal issue of law and fact that was "easily capable of arising in hundreds of even thousands of cases in district courts throughout the nation,…there are real economies in transferring such cases" to a single judge under Section 1407. *Id.* at 9. "Once transferred, the [legal issue] can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency was well as economy is thus served." *Id.*

Hartford's argument that centralization would delay resolution of its pending motions to dismiss, *see* ECF No. 146, at 11-12, has already been considered and rejected by this Panel:

> The parties opposing centralization assert that, *inter alia*, centralization will needlessly delay resolution of the Massachusetts action, in which a fully briefed motion to dismiss is already pending. Based upon the Panel's precedents and for the following reasons, we respectfully disagree with this argument. While there may indeed be some initial delay incorporating all actions into a centralized forum, ***centralization nevertheless carries the benefit of placing all of these related nationwide class actions before a single judge*** who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring

8

       that common parties such as Prudential and other witnesses are not subjected to discovery demands that duplicate activity in other actions."

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011). The gains from centralization here are similarly too great to justify permitting dozens of different courts to reach inconsistent rulings on the pending motions to dismiss.

       Finally, Hartford claims that "many of the plaintiffs in cases against Hartford do not favor creation of a Hartford-only MDL" premised upon the briefing in MDL No. 2942. *See* ECF No. 146, at 12. However, in response to the Order to Show Cause, eleven out of the fifteen plaintiff filings who took a position on centralization supported centralization as did one of the *amicus* who filed a response. *See* ECF Nos. 115, 131, 132, 133, 137, 139, 141, 142, 143, 147, 148, and 154.[5] There is significant support for centralization among plaintiffs' counsel.

## II. THE EASTERN DISTRICT OF PENNSYLVANIA IS THE APPROPRIATE FORUM FOR TRANSFER AND CENTRALIZATION

       For the reasons set forth in their Response, Plaintiffs believe the Eastern District of Pennsylvania is the appropriate forum for this litigation. *See* ECF No. 132, at 13-16. In addition to the overall number of cases in the Eastern District of Pennsylvania, three of the ten responses to the Order to Show Cause filed by other plaintiffs who favor centralization support transfer to the district, ECF Nos. 141, 142, and 147, with an additional plaintiff supporting the district as its second choice, ECF No. 137.

       In total, plaintiffs in approximately twenty-seven cases that are pending in eleven different federal districts support the Eastern District of Pennsylvania. No other district has such support. Other filings provide singular support for a given venue – the District of New Jersey (ECF No.

---

[5] One plaintiff, The Seattle Symphony Orchestra, opposed its inclusion in any Hartford-specific MDL because it had negotiated very specific terms of its own policy but specifically took no position with respect to centralization generally. *See* ECF No. 136

115), the District of Connecticut (ECF No. 133), the Southern District of Florida (ECF No. 137), the Eastern District of New York (ECF No. 143), and the Western District of Pennsylvania (ECF No. 148). A few filings that opposed centralization offered up support for a specific venue as an alternative but again, it was singular support – the District of Massachusetts (ECF No. 134), the Eastern District of Missouri (ECF No. 140), the Southern District of New York (Defendant) (ECF No. 146), and the Northern District of California (ECF No. 172).  None of these suggested venues has the level of support as the Eastern District of Pennsylvania nor has any party illustrated that the COVID-19 litigation is as developed in any other district as it is in the Eastern District of Pennsylvania where many motions to dismiss have been briefed and discovery is ongoing.[6]  Simply put, the gravitas of this litigation is in the Eastern District of Pennsylvania.

### III.    CONCLUSION

For the above-stated reasons, as well as those discussed in Plaintiffs' Response, ECF No. 132, Plaintiffs respectfully request that the Panel transfer these related actions and all subsequently filed tag-along cases for coordinated or consolidated pretrial proceedings before the Honorable Timothy J. Savage in the United States District Court for the Eastern District of Pennsylvania.

---

[6] As noted in Plaintiffs' Response, plaintiffs in two cases pending in the Eastern District of Pennsylvania, one of which is against a Hartford entity – *Cadence Humans & Resources, LLC, doing business as Cadence Restaurant v. Firstline National Insurance Company*, Case No. 2:20-cv-02152, and *Seymon Bokman d/b/a L'uomo v. Sentinel Ins. Co., Ltd*., Case No. 2:20-cv-02887 – served Subpoenas *duces tecum* on ISO. ECF No. 132, at 14. Additional discovery – Plaintiffs' First Request for the Production of Documents – was served in the *Bokman* case against Sentinel.  In addition, motions to dismiss in two of the earliest cases filed – *LH Dining L.L.C., doing business as River Twice Restaurant v. Admiral Indemnity Company*, Civil Action No. 2:20-cv-01869 (E.D. Pa.) and *Newchops Restaurant Comcast LLC, doing business as Chops v. Admiral Insurance Company*, Civil Action No. 2:20-cv-01949 (E.D. Pa.) – have been fully briefed. *Id*. at 14-15.

Dated:  September 2, 2020	Respectfully submitted,

/s/ *Arnold Levin*
Arnold Levin, Esquire
Laurence S. Berman, Esquire
Frederick S. Longer, Esquire
Daniel C. Levin, Esquire
Keith J. Verrier, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com
kverrier@lfsblaw.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
rgolomb@GolombHonik.Com
KGrunfeld@GolombHonik.Com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama  36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Dee.Miles@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com

***Counsel for Plaintiffs Forfex LLC, JDR***

/s/ *Adam J. Levitt*
Adam J. Levitt
John E. Tangren
Amy E. Keller
Daniel R. Ferri
Mark Hamill
Laura E. Reasons
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com

/s/ *Mark Lanier*
Mark Lanier
Alex Brown
Ralph (skip) McBride
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 770064
Telephone: (713) 659-5200
WML@lanierlawfirm.com
Alex.brown@lanierlawfirm.com
Skip.McBride@lanierlawfirm.com

Mark A. DiCello
Kenneth P. Abbarno
Mark Abramowitz
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

*Enterprises LLC, Patrick and Geoff Investments Inc., Roundin3RD Sports Bar, LLC, R3 Hospitality Group, LLC, Little Stars Corporation, Consulting Advantage Inc., Rencana LLC, The Irvine Company LLC, Harvey B. Pats, M.D.P.A., Dotexamdr PLLC, Ambulatory Care Center, PA, Sharde Harvey DDS PLLC, Salvatore's Italian Gardens, Inc., Garden Place, Inc., The Delavan Hotel LLC, Sidkoff, Pincus & Green PC, Adrian Moody, Robin Jones, Seymon Bokman, Adorn Barber & Beauty LLC, ATCM Optical, Inc., Omega Optical, Inc., and Omega Optical at Comcast Center LLC d/b/a Omega Optical*

Timothy W. Burns
Jeff J. Bowen
Jesse J. Bair
Freya K. Bowen
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: (608) 286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone: (713) 917-0024
douglas.daniels@dtlawyers.com

Jeffrey P. Goodman
Robert J. Mongeluzzi
Patrick Howard
Samuel B. Dordick
**SALTZ, MONGELUZZI & BENDESKY, P.C.**
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 496-8282
jgoodman@smbb.com
rjmongeluzzi@smbb.com
phoward@smbb.com
SDordick@smbb.com

*Counsel for Plaintiffs Cosmetic Laser, Inc., Dr. Jeffrey Milton DDS, Inc., and One40 Beauty Lounge, LLC*